S95A1345. CHAMBERS et al. v. THE STATE.
(463 SE2d 887)

SEARS, Justice.

Appellants Alando Chambers and Roderick McKissick appeal their convictions for malice murder, aggravated assault, and possession of a firearm during the commission of a crime. We affirm.

The evidence introduced at trial showed that on the night of the murder, appellant Chambers was driving a car in which appellant McKissick was the front seat passenger, and witness Thomas was the back seat passenger. Thomas overheard Chambers and McKissick discuss carjacking and stealing car parts. The car stopped at a traffic light, and Chambers and McKissick commented that they liked the car that stopped next to them. Chambers and McKissick then followed that car, and when that car slowed down, they stopped beside it. Chambers rudely addressed the driver of the car being followed, and then leaned back in his seat. When Chambers leaned back in his seat, McKissick leaned across Chambers, and began firing a gun into the second car, killing the driver and wounding the passenger.

McKissick, Chambers, and Thomas were arrested the following day, and signed voluntary statements admitting involvement in the shooting. McKissick was arrested in possession of a loaded .25 caliber handgun, which he identified as the murder weapon, and Chambers was arrested in possession of the car used in the shooting. After changing his initial story, McKissick admitted that he shot at the car, but claimed he was shot at first and fired only in self-defense. Chambers admitted driving the car during the shooting and pulling along the side of the second car, but denied knowing that McKissick was going to shoot at it. Thomas turned State's evidence, and the facts discussed above were adduced from his testimony, and the testimony of the surviving victim.[1]

---

[1] The murder was committed on July 14, 1993, and appellants were indicted on December 21, 1993. The trial began on May 16, 1994, and the jury's guilty verdicts were returned on May 19, 1994. On May 24, 1994, appellants were each sentenced to life imprisonment for malice murder, ten years for aggravated assault, and five years for the possession of a firearm during the commission of a felony, all to run concurrently. Motions for new trial were filed on June 23, 1994, amended on July 12, 1994, and denied on March 14, 1995. Notices of appeal

1. We find that based upon the facts discussed above, a rational trier of fact could have found beyond a reasonable doubt that Chambers and McKissick were guilty of malice murder, aggravated assault, and the possession of a firearm during the commission of a crime.[2]

2. During opening arguments, the prosecutor stated that:

[T]his . . . is not a murder case in which the death penalty is applicable. . . . [T]he State is [not] asking for the death penalty because the law sets out . . . aggravating circumstances that must be . . . present in order [to seek the] death penalty, and we don't have [them] in this case. So this is what we in our office just call an ordinary murder . . . that you can't get a death penalty on, so we are here seeking maximum of life imprisonment in the event of conviction of the [appellants].

The trial court sustained appellants' objection to this statement, and in so doing instructed the jury that:

[P]unishment is not within the purview of the jury. Punishment is determined by the court, and a whole lot of other factors. [The prosecutor] even mentioning the maximum or minimum punishment is not relevant to your determination at all. Please disregard it and counsel will not mention it anymore.

Thereafter, out of the presence of the jury, appellants' motion for a mistrial was denied by the trial court, which noted that it was not improper for the prosecution to state that this was not a death penalty case. The trial court also admonished counsel not to discuss possible sentences before the jury.

Appellants argue on appeal that the trial court erred in not declaring a mistrial, because in making the improper statement, the State intended to infer to the jury that (1) their role was not as important, and (2) the State's burden was not as heavy, as would be the case if the death penalty were being sought. Appellants claim that the court's "perfunctory instruction" in response to defense counsel's objection was insufficient to cure the prejudice raised in the minds of the jury by the State's improper comment.

We find that while the State's comments were improper, the trial court's curative instruction was sufficient to eliminate the statements

---

were timely filed on March 30, 1995, and this appeal was docketed on May 17, 1995. On July 10, 1995, this case was submitted for decision without oral argument.

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

from the jury's consideration, and preserve appellants' rights to a fair trial. It is established that when passing on a motion for mistrial due to improper statements by the prosecution, the court should take action which it believes will prevent harm to the defendant, and a new trial should not be granted "unless it is clear that such action failed to eliminate the statement from consideration by the jury."[3] In this case, the trial judge did not abuse his discretion in denying a mistrial because the improper remark was cured by a timely rebuke and the giving of a corrective instruction calculated to preserve the right to a fair trial.[4]

3. Appellants also argue that they were afforded ineffective assistance of counsel which improperly prevented them from exercising their rights to testify on their own behalf at trial. McKissick claims that his counsel was ineffective because, had he put McKissick on the stand, McKissick could have explained to the jury that he fired in self-defense. Chambers claims that his counsel was ineffective because had he put Chambers on the stand, Chambers could have explained to the jury that he was not involved in the shooting.

At the hearing on appellants' motion for new trial, McKissick's counsel testified that he discussed with McKissick the right to testify on numerous occasions, beginning with his first meeting with McKissick. McKissick's counsel testified that he rehearsed McKissick's testimony with him, and that after hearing the State's case, recommended that McKissick not testify because the various and contradicting stories given by McKissick to the police would be damaging if brought out on cross-examination. McKissick's counsel also testified that after discussing the pros and cons of testifying with McKissick, McKissick stated he did not want to testify.

Also at the hearing on the motion for new trial, Chambers' counsel testified that before the trial began, he had numerous conversations with Chambers regarding whether he should testify. The last of these conversations took place after the State rested, during which Chambers said that he did not want to testify. Chambers' counsel had recommended that Chambers not testify, because he feared that incriminating evidence would result from the State's cross-examination, and was concerned about the implications of Chambers' leaning back in his car seat just before McKissick started shooting across him at the second car — a fact counsel did not want developed during cross-examination.

Based upon this testimony, we find that appellants have failed to prove that counsels' performances were deficient, and that appellants

---

[3] *Chancey v. State*, 256 Ga. 415, 435 (349 SE2d 717) (1986), cert. denied, 481 U. S. 1029 (107 SC 1954, 95 LE2d 527) (1987).

[4] See *Benefield v. State*, 140 Ga. App. 727, 730 (232 SE2d 89) (1976).

were prejudiced as a result thereof.[5] The decision whether or not to testify is a tactical one made by the defendant himself after consultation with counsel.[6] The choice of whether to testify is ultimately a defendant's.[7] As the testimony of appellants' respective counsel makes clear, tactical decisions were made, based upon sound reasoning, that in light of the circumstances of the trial, it was not in appellants' best interests to testify. Having been so advised, appellants themselves opted not to testify. Hence, appellants have failed to satisfy their burden of showing that counsel was deficient.[8]

*Judgment affirmed. All the Justices concur.*

DECIDED DECEMBER 4, 1995.

*William J. Mason*, for appellants.
*Douglas C. Pullen*, District Attorney, *J. Gray Conger*, Assistant District Attorney, *Michael J. Bowers*, Attorney General, *Susan V. Boleyn*, Senior Assistant Attorney General, *Rachelle L. Strausner*, Assistant Attorney General, for appellee.

---

[5] See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782 (325 SE2d 362) (1985).

[6] *Burton v. State*, 263 Ga. 725, 728 (438 SE2d 83) (1994).

[7] *United States v. Teague*, 953 F2d 1525 (11th Cir. 1992).

[8] See *Strickland*, note 4, supra. While not necessary to our decision, we also note that appellants also have failed to show a reasonable probability that, had they testified, the result of the proceeding would have been different. *Strickland*, 466 U. S. at 668. See *Perkins v. State*, 260 Ga. 292, 294 (392 SE2d 872) (1990). Appellants have not shown that the jury would have acquitted them had they testified and contradicted the incriminating testimony of Thomas and the surviving victim with their own uncorroborated and conflicting stories.