A03A0312. DUCKETT v. THE STATE.
(578 SE2d 524)

ELLINGTON, Judge.

A Cobb County jury convicted Brian Scott Duckett of armed robbery, OCGA § 16-8-41 (a); and two counts of aggravated assault, OCGA § 16-5-21 (a). Following the denial of his motion for new trial, Duckett appeals, challenging several evidentiary rulings and the sufficiency of the evidence. Finding no error, we affirm.

---

[3] *Rembert v. Arthur Schneider Sales*, 208 Ga. App. 903, 905 (432 SE2d 809) (1993).

Viewed in the light most favorable to the verdict,[1] the record reveals the following facts. On January 19, 1997, Duckett, Anthony Meginley, and Daniel Lewis, who worked together in a movie theater in Chattanooga, Tennessee, drove to Marietta to commit a robbery. The three men went to a movie theater, purchased tickets, and went in. Lewis lured the concessions manager into an auditorium where the movie had ended. There, Duckett placed a gun to the back of the concessions manager's head and told him to sit down. The three robbers questioned the concessions manager about the theater's safe and about how many employees were still in the theater.

While his accomplices held the concessions manager hostage, Lewis went to the theater office and asked the theater manager to help him find a contact lens. After the manager accompanied Lewis to the auditorium, Duckett pointed a gun at her. After questioning the theater manager and the concessions manager about the security system and the safe and obtaining the keys, Duckett and Meginley went to the theater office. They took cash from the safe and bank bags full of cash from the office and took the surveillance video recorder with the security video still inside. Before leaving the theater, the robbers bound and gagged the victims with pantyhose and duct tape.

A few weeks later, Meginley's former roommate, Martin Hollis, contacted Marietta police and turned over the videotape and some bank bags. Hollis told police that Duckett, Meginley, and another man committed the theater robbery. The police showed the theater manager the videotape, and she identified three men depicted on the videotape as the ones who robbed her. Meginley cooperated with police and gave a statement about the robbery. In a consent search of Meginley's home, Chattanooga police found the surveillance video recorder and several bank bags. Chattanooga police located Duckett's car in a repair shop, impounded it, and searched it. They found duct tape, a package of pantyhose, and a box of ammunition in Duckett's car. During trial, Lewis changed his plea to guilty and testified against Duckett.

1. Duckett contends the trial court abused its discretion in denying his motion to suppress evidence seized in a warrantless search of his vehicle. "When reviewing a trial court's decision on a motion to suppress, we construe the evidence most favorably toward upholding the court's findings and judgment. Absent an abuse of discretion, the trial court's order on a motion to suppress will not be disturbed." (Citations omitted.) *Boone v. State*, 256 Ga. App. 220, 221 (1) (568 SE2d 91) (2002).

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SC 2781, 61 LE2d 560) (1979).

Viewed in the light most favorable to the court's ruling, the evidence shows that Chattanooga police officers attempted to help Marietta officers locate and arrest Duckett for the theater robbery. In this effort, officers learned of a theft of theater concessions products, paper supplies, and other items from Duckett's employer. While staking out a body shop where Duckett was expected to come to retrieve his car, officers observed movie posters, popcorn bags with the theater logo, and concession soda cups on the back seat of Duckett's car. Officers impounded the car, performed a routine impoundment inventory, and discovered evidence linking Duckett to the Marietta armed robbery.

The plain view doctrine permits "a warrantless search and seizure if the agents are lawfully in position to obtain the view, the discovery is inadvertent, and the object viewed is immediately seen to be incriminating." (Punctuation and footnote omitted.) *Zeeman v. State*, 249 Ga. App. 625, 628 (2) (549 SE2d 442) (2001). See *Arizona v. Hicks*, 480 U. S. 321 (107 SC 1149, 94 LE2d 347) (1987). In this case, the police officers had the owner's permission to be on the auto shop premises, the officers had not sought out Duckett's car looking for evidence of the Chattanooga theft, and the stolen items were immediately seen to be incriminating. Accordingly, the trial court did not abuse its discretion in finding that the search of Duckett's car satisfied the requirements of the plain view exception. *Galloway v. State*, 178 Ga. App. 31, 34-35 (342 SE2d 473) (1986).

2. Duckett contends the trial court abused its discretion in admitting a photograph for which the State failed to lay a proper foundation. "It is well settled that the quantum of evidence required to sufficiently identify photographs as true and accurate representations of what they purport to depict is a matter to be left within the discretion of the trial court." (Citation and punctuation omitted.) *Lamar v. State*, 256 Ga. App. 567, 571 (2) (568 SE2d 837) (2002). In this case, the victim testified that she recognized the person in the photograph and that the picture accurately reflected Duckett's appearance when she saw him on the date of the robbery, except that he had been more clean shaven when she saw him. We find no abuse of discretion in the admission of the photograph.

3. Duckett contends the trial court abused its discretion in allowing the theater manager's courtroom identification, which, he argues, had been tainted by the victim's pretrial viewing of the photograph discussed in Division 2, supra. As the State correctly points out, however, Duckett identified no evidence that the victim viewed the photograph before trial. Because Duckett has shown no pretrial viewing, we do not reach the threshold question of whether the iden-

tification procedure was impermissibly suggestive.[2] See *Azizi v. State*, 270 Ga. 709, 713 (5) (512 SE2d 622) (1999). There was no error.

4. Duckett contends the trial court abused its discretion in denying his motion for a mistrial during the testimony of Meginley's former roommate, Hollis. During the State's opening statement, Duckett moved to exclude any testimony about a conversation between Hollis and Meginley about a week after the robbery in which Meginley described the robbery and said it was Duckett's idea. The State offered the evidence as a declaration of a conspirator under OCGA § 24-3-5.[3] Duckett contends the hearsay was not admissible because it lacked sufficient indicia of reliability.

Duckett, the defendant, and Meginley, the declarant, were coconspirators, and Meginley's statements were made during the concealment phase of the conspiracy. Accordingly, Meginley's statements were admissible against Duckett under OCGA § 24-3-5 as long as they bore sufficient indicia of reliability. *Copeland v. State*, 266 Ga. 664, 665 (2) (b) (469 SE2d 672) (1996). There are four factors that are recognized as indicia of reliability:

> (1) the absence of an express assertion about a past fact; (2) the declarant had personal knowledge of the identity and roles of the participants in the crime and cross-examination of the declarant would not have shown that the declarant was unlikely to know whether the defendant was involved in the crime; (3) the possibility that the declarant's statement was founded on faulty recollection was remote; and (4) the circumstances under which the declarant gave the statement suggest that the declarant did not misrepresent the defendant's involvement in the crime.

(Footnote omitted.) Id.

Applying these factors to the facts of the present case, we conclude that only the first weighs against reliability in that the statement that Duckett was involved in the robbery was "clearly an asser-

---

[2] When an in-court identification is allegedly tainted by a pretrial showup, lineup, or display of photographs, we first consider whether the pretrial identification procedure was impermissibly suggestive. *Azizi v. State*, 270 Ga. 709, 713 (5) (512 SE2d 622) (1999). See *Simmons v. United States*, 390 U. S. 377 (88 SC 967, 19 LE2d 1247) (1968). If the pretrial identification procedure is found to be impermissibly suggestive, we then consider the second question, "whether there was a substantial likelihood of irreparable misidentification." *Azizi v. State*, 270 Ga. at 713 (5). "It is the likelihood of misidentification which violates a defendant's right to due process, and it is this which is the basis of the exclusion of evidence." (Citation and punctuation omitted.) *Dee v. State*, 273 Ga. 739-740 (545 SE2d 902) (2001).

[3] "After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." OCGA § 24-3-5.

tion of a past fact and leaves nothing for the jury to infer." *Copeland v. State*, 266 Ga. at 665 (2) (b). The other factors, however, weigh in favor of reliability. Id. Meginley had personal knowledge of the identities and roles he and Duckett played in the robbery; cross-examination would not have shown that Meginley was unlikely to know whether Duckett was involved in the crime. *Fetty v. State*, 268 Ga. 365, 371-372 (7) (489 SE2d 813) (1997). Looking to the third factor, we conclude that the possibility that Meginley's statement was based on faulty recollection is remote since Meginley made the statement shortly after the commission of a serious crime. Id.; *Copeland v. State*, 266 Ga. at 665 (2) (b). The circumstances surrounding the statement, which was against his own penal interest, do not suggest that Meginley misrepresented Duckett's involvement in the crime. Id. "Contrary to defendant's assertion, [Hollis's] testimony as to the statements made by [Meginley] was not inadmissible simply because [Meginley] was not available for cross-examination. The statements contained sufficient indicia of reliability to ensure that defendant's Sixth Amendment rights were not violated." (Citations omitted.) *Robertson v. State*, 268 Ga. 772, 776 (11) (493 SE2d 697) (1997). Although the first factor does weigh against reliability, "standing alone it cannot offset our conclusion that the other three factors weigh heavily in favor of reliability." (Footnote omitted.) *Fetty v. State*, 268 Ga. at 371-372 (7). Upon consideration of all these factors, we conclude that sufficient indicia of reliability existed to afford the jury a satisfactory basis for evaluating the truth of Meginley's statement. Id.; *Robertson v. State*, 268 Ga. at 776 (11); *Copeland v. State*, 266 Ga. at 665 (2) (b).

5. Duckett contends the trial court abused its discretion in denying his motion for a mistrial after Hollis testified as to Duckett's general bad character.

(a) Hollis testified that he gave a false name when he first contacted the police because he was afraid of Duckett. Hollis explained that Meginley told him Duckett "shot someone before and he could do it again." Duckett objected and moved for a mistrial, and the trial court sustained the objection, denied the motion for mistrial, and gave the jury curative instructions. After the curative instructions, Duckett did not renew his motion for mistrial. Accordingly, Duckett waived this issue, and we do not review the denial of his motion for mistrial. *Ford v. State*, 269 Ga. 139, 141 (3) (498 SE2d 58) (1998); *Williams v. State*, 269 Ga. 827, 829 (5) (504 SE2d 441) (1998).

(b) An investigator testified about finding movie theater concessions products in Duckett's residence. When asked about the quantity, the investigator said there was so much that the theater had to send a pickup truck to take the products back to the theater. The prosecutor asked, "[W]ere these products eventually returned to their rightful owner?" Duckett objected to these questions and

answers on the basis that the implication that his residence contained stolen goods introduced the issue of his character and then requested curative instructions. The trial court gave the agreed-upon curative instructions. Duckett did not object to the curative instructions or move for a mistrial after they were given. Therefore, this issue has not been preserved for appellate review. *Smith v. State*, 270 Ga. 240, 250 (14) (510 SE2d 1) (1998).

6. Duckett contends the evidence was insufficient to support his convictions. When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation and emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

Duckett's insufficiency argument assumes the exclusion of the evidence considered in Divisions 1, 2, and 3, supra. In those Divisions, however, we held the challenged evidence was properly admitted. The evidence at trial was sufficient for a rational trier of fact to find Duckett guilty beyond a reasonable doubt of armed robbery and aggravated assault. *Clark v. State*, 226 Ga. App. 176, 177 (1) (486 SE2d 393) (1997).

*Judgment affirmed. Blackburn, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 24, 2003.

*H. Gray Skelton, Jr.*, for appellant.

*Patrick H. Head, District Attorney, Amelia G. Pray, Ann B. Harris, Assistant District Attorneys*, for appellee.