## A03A2235. PINCH v. THE STATE.
(593 SE2d 1)

ANDREWS, Presiding Judge.

Following a jury trial, Jonathan G. Pinch was found guilty of driving under the influence to the extent that it was less safe to drive, failure to obey stop sign, no license on person, reckless driving, improper lane change, and failure to use turn signal. Pinch claims the trial court erred in (1) refusing to grant a mistrial based on the improper admission of a videotape, (2) not ruling on the lack of probable cause for arrest for driving under the influence, (3) failing to grant motions for the reduction of charges, (4) allowing an improper closing argument, and (5) its charge to the jury. We affirm for the reasons set forth below.

Viewed in a light most favorable to the verdict, the evidence shows that on October 9, 2001, Officer Cary Bond of the Atlanta Police Department saw a Jaguar automobile traveling down Peachtree Street at a high rate of speed. As the Jaguar passed Bond going in the opposite direction, the driver "punched" the accelerator, causing exhaust and dust to swirl up behind the vehicle, and the Jaguar quickly passed the slower car in the center lane, then cut back in front of the car. According to Bond, the Jaguar was traveling much faster than the vehicles around it, and the driver was "a lot more aggressive than the other drivers in the roadway" and "blew my doors off and then blew the doors off the car that he ripped around." Bond turned his car around to follow the Jaguar. He saw the driver make a lane change in front of a MARTA bus without using a signal,

and then turn onto a side street. The Jaguar came to a stop sign and slowed but did not stop before going through the intersection.

Bond turned on his siren and blue lights, intending to stop the Jaguar, but the car turned into a restaurant parking lot and the driver exited the car. During his trial testimony, Bond identified the driver of the Jaguar as Pinch. When Bond approached Pinch in the parking lot, Pinch was unable to produce a license, which he claimed had been stolen a week earlier. Bond noticed that Pinch had a strong odor of an alcoholic beverage on his breath. Pinch's face was flushed and reddish, and his eyes were bloodshot and glassy. He was talkative, but his speech was thick tongued. Pinch told Bond that he had had two to three drinks, his last drink being about an hour before. Bond asked Pinch to step away from his vehicle, and conducted a horizontal gaze nystagmus evaluation, a walk and turn, and a one-leg stand test. Although Pinch told Bond that he had diabetes, Pinch did not identify it as a problem which would impair his ability to perform the field evaluations. Pinch's performance on each of the evaluations indicated that he was impaired.

Bond arrested Pinch and then read Pinch his implied consent rights. Although Bond read the implied consent rights twice, Pinch indicated that he did not understand them. Pinch was transported downtown and taken to a machine for a breath test. Pinch "stated at that point in time that he thought he would blow over. He didn't know what to do, so he chose not to take it."

1. Bond's patrol car was equipped with a videocamera, and Bond wore a microphone and there was a microphone in the back seat of the patrol car for purposes of audio recording. This equipment recorded a videotape of Bond's stop of Pinch on the evening of October 9, 2001. A redacted version of the videotape was introduced into evidence. Pinch claims the trial court erred by not granting a mistrial based on the introduction of the videotape. Pinch also complains that the trial court erred in not granting his motion to exclude certain parts of the videotape. We disagree.

The trial court held a pretrial hearing to consider Pinch's motion in limine to exclude a portion of the videotape. After viewing the unedited tape and hearing argument from counsel, the trial court ordered that the videotape be redacted to exclude some but not all of the material that Pinch asked to be excluded. Defense counsel maintained that he would ask for a mistrial if the redacted videotape was introduced without excluding certain conversations between Pinch and Bond. When the videotape was introduced into evidence, however, Pinch's counsel did not object or move for a mistrial. Only after the close of evidence did defense counsel make a motion for mistrial based on the introduction of the redacted videotape. The correct time for making a motion for mistrial is contemporaneous with the alleged

misconduct. See *Garner v. State*, 180 Ga. App. 146, 147 (1) (348 SE2d 690) (1986). "Where a motion for a mistrial is not made until the conclusion of the evidence, it is not timely and will be considered as having been waived because of the delay in making the motion." (Citation and punctuation omitted.) *Favors v. State*, 145 Ga. App. 864, 867 (4) (244 SE2d 902) (1978). Accordingly, the trial court did not err in denying Pinch's motion for a mistrial.

Pinch also maintains the trial court erred in denying his motion in limine to exclude certain portions of the videotape. The State contends that Pinch has waived some of his claims with regard to the introduction of the videotape by failing to object when the videotape was introduced. However, when a motion in limine "has been filed, a defendant does not need to renew his objection at trial to preserve the issue on appeal." *Crenshaw v. State*, 248 Ga. App. 505, 508 (3), n. 11 (546 SE2d 890) (2001).

Pinch first argues that the trial court erroneously failed to exclude a private conversation at the end of the videotape between Pinch and the woman who had been a passenger in his vehicle. "The trial court has great discretion to determine relevancy and materiality of evidence, and admission is favored in doubtful cases." *George v. State*, 242 Ga. App. 580, 582 (2) (530 SE2d 479) (2000). At the hearing on his motion in limine, Pinch argued that this conversation was unfairly prejudicial because it concerned who was going to call Pinch's wife to get him out of jail. The trial court ordered that the tape be redacted to exclude references to Pinch's wife. Before voir dire, Pinch complained to the trial court that the videotape had not been redacted in accordance with the trial court's instructions because it did not exclude the entire conversation between Pinch and the female passenger. The trial court disagreed and ruled that the prejudicial portions of the conversation had been removed from the tape. We find that the trial court acted within its discretion by excluding the references to Pinch's wife but not excluding the remainder of the conversation. The conversation was relevant to the charged offense because it showed Pinch's demeanor shortly after he had driven a vehicle, and we conclude that it was not unfairly prejudicial to show Pinch conversing with his passenger.

Pinch also contends that the trial court erred in not excluding that portion of the videotape in which Pinch asks Bond what the consequences would be of a DUI because Bond's response implied that Pinch had a prior DUI. The trial court ruled that Bond was responding to specific questions by Pinch and there was no introduction of a prior transaction. We agree with the trial court and find no error.

Pinch further maintains that "the trial court should have granted [his] motion to exclude part of the videotape where [he] is read the Implied Consent Warning twice due to the likelihood of prej-

udice to the jury." However, Pinch's counsel agreed there was nothing prejudicial about Bond reading Pinch his implied consent rights twice. Pinch argues that the implied consent warning became improper because Bond did not correctly respond to Pinch's questions about his rights. However, the issue before the trial court was whether material should have been redacted from the videotape because it was prejudicial and not whether the implied consent warning was sufficient. See *Klinect v. State*, 269 Ga. 570, 574 (6) (501 SE2d 810) (1998) (issue cannot be raised for the first time on appeal). Pinch's enumeration of error is without merit.

2. Pinch claims the trial court erred by not ruling on the lack of probable cause for arrest for DUI. Defense counsel argued lack of probable cause to arrest Pinch at the hearing on motion to suppress, and the trial court ruled that Bond had probable cause to stop and arrest Pinch for the traffic offenses and was then entitled to add the DUI charges. Bond saw Pinch commit traffic violations for which he was subject to arrest. OCGA § 17-4-23. After Pinch was stopped, Bond developed probable cause to arrest Pinch for DUI. "The material inquiry is whether the facts within the officers' knowledge at the time of the arrest constituted reasonably trustworthy information sufficient to authorize a prudent person to believe that [Pinch] had committed that offense." *Boyd v. State*, 259 Ga. App. 864, 865 (1) (578 SE2d 472) (2003). Information known to Bond and tending to show Pinch had been driving under the influence to the extent it was less safe included Bond's observation of Pinch's driving, the odor of alcohol on Pinch's person, Pinch's bloodshot eyes, and Pinch's performance on the field tests. See *Whitener v. State*, 201 Ga. App. 309, 310 (1) (410 SE2d 796) (1991). We find no error by the trial court.

3. Pinch claims the trial court erred by failing to grant his motions for a reduction of the charges of driving without a license on his person and reckless driving. We disagree.

OCGA § 40-5-29 (a) states: "Every licensee shall have his driver's license in his immediate possession at all times when operating a motor vehicle." Pinch argued at the pretrial hearing that this charge should not be presented to the jury because his driver's license had been stolen and a new one ordered from Florida, where he was licensed. However, Pinch did not contend he had his license in his possession when he was driving and he did not produce a valid driver's license. The trial court did not err in letting the issue go to trial.

OCGA § 40-6-390 (a) states: "Any person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving." Pinch has not referred us to where in the pretrial hearing he made a motion to dispose of the charge of reckless driving. The argument in his appellate brief refers to the

evidence adduced at trial, indicating a claim of insufficiency of evidence with respect to this charge. Pinch contends that his driving could not be construed as reckless in any way. We disagree, inasmuch as testimony showed Pinch was driving at a speed much faster than the surrounding vehicles, "punched" his accelerator, made abrupt lane changes, and ran a stop sign, which was sufficient for a rational trier of fact to find Pinch guilty beyond a reasonable doubt of the offense of reckless driving. See *Pennington v. State*, 254 Ga. App. 837 (564 SE2d 219) (2002); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

4. Pinch claims that the trial court erred in allowing the State to proceed with closing argument after the solicitor-general improperly attempted to shift the burden of proof to Pinch, and that the solicitor-general's actions misled the jury and constituted grounds for a mistrial. We conclude that the trial court acted properly in giving curative instructions to the jury and no reversal is required.

In closing argument the solicitor-general told the jury that if Pinch had taken the breath test, "it was a possibility whether he goes to jail or he'd have the opportunity to go home, depending on the test results. If he refused, he automatically would go to jail." Defense counsel objected and the trial court sustained the objection. The solicitor-general then argued that if Pinch had taken the breath test, "it's possible that he could have gone home that night." Defense counsel again objected and the objection was sustained. The prosecutor later argued that if Pinch had taken the breath test, "there was a chance to show sobriety."

After the closing argument, defense counsel moved for a mistrial because the solicitor-general had effectively told the jury that Pinch could have exonerated himself by taking the breath test. The trial court brought the jury back in and gave curative instructions, telling the jury that "there is no burden of proof upon the defendant whatever, and the burden never shifts to the defendant to prove his innocence in the case." The trial court also instructed the jury to disregard and to give no consideration to the statement by the solicitor-general that "the defendant by taking the state administered test could have proved that he was innocent or may have been let go from jail."

If the trial court's instructions impermissibly shift the burden of proof to the defendant, then a reversal may be required. See, e.g., *Baird v. State*, 260 Ga. App. 661, 664 (1) (580 SE2d 650) (2003). Here, however, it is the solicitor-general's remarks during closing that Pinch contends misinformed the jury. In such a case the trial court should act to prevent harm to the defendant, and a new trial should not be granted unless it is clear that the trial court's actions "failed to eliminate the [solicitor-general's] statement from consideration by

the jury." (Punctuation and footnote omitted.) *Chambers v. State*, 266 Ga. 39, 41 (2) (463 SE2d 887) (1995). We conclude that "while the State's comments were improper, the trial court's curative instruction was sufficient to eliminate the statements from the jury's consideration, and preserve [Pinch's] rights to a fair trial." Id. at 40-41. Accordingly, the trial court did not err in denying Pinch's motion for a mistrial.

5. The trial court charged the jury that, "in deciding this issue, you may consider anything in evidence you find relevant in deciding whether the defendant was a less safe driver. . . . And you may consider whether any test indicated the presence of alcohol in the defendant's system." Pinch contends this charge was harmful as a matter of law and blatantly prejudicial because no test results existed to show what was in his system for the jury to take into account. However, Bond performed field tests designed to show the presence of alcohol. The trial court's charge was not erroneous.

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED DECEMBER 2, 2003 —
RECONSIDERATION DENIED DECEMBER 29, 2003

*Head, Thomas, Webb & Willis, William C. Head*, for appellant.
*Joseph J. Drolet, Solicitor-General, Frank T. Gomez, Assistant Solicitor-General*, for appellee.