A06A0794. DICKERSON v. THE STATE.
A06A0795. WILKERSON v. THE STATE.
(633 SE2d 367)

MIKELL, Judge.

A Bulloch County jury convicted Courtney Demond Dickerson and Lenzie Aaron Wilkerson of one count of burglary, four counts of armed robbery, one count of criminal attempt, six counts of kidnapping, one count of aggravated sexual battery, and one count of possession of a firearm or knife during commission of certain crimes.[1] Dickerson and Wilkerson appeal, arguing that the trial court erred when it admitted hearsay testimony, excluded photographic lineup evidence, and excluded bad acts of one of the victims. The appellants also challenge the sufficiency of the evidence. Because the issues raised in both cases are identical, the cases have been consolidated for purposes of appeal. Based on the reasons set forth below, we affirm.

---

[1] Jointly indicted with the appellants were Alfonzo Danien Canty and Levi Alexander Wilkerson, both of whom pled guilty to each offense alleged in the 14-count indictment.

Construed in favor of the verdict, the evidence shows that at approximately 11:00 p.m. on Sunday, November 26, 2001, Dustin James, Sean Greer, and S. S., an adult female, were visiting with their friends, Jason Parrish, Jason Rigby, and Joel Pressley, who lived in an apartment complex in Statesboro. Rigby testified that two men knocked at the door and asked to buy marijuana and that fifteen minutes later, the same men returned, one of whom carried a pistol, and charged into the apartment. They were accompanied by three men, who were wearing masks, and one of the masked men was carrying a shotgun. Rigby described the first two men: one was short and stocky and wore a skull cap and the other was tall and skinny and had a shaved head and a light complexion.

Pressley, Rigby, and Greer all testified that the men covered their eyes with duct tape, tied their hands behind their backs, piled them on top of each other, and placed a coffee table on top of them. James testified that the perpetrator carrying the pistol found him in the kitchen, ordered him to the floor, and bound his hands and feet with duct tape. Rigby testified that the perpetrators stole the money from his wallet, and Pressley testified that they stole his keys and his camcorder.

Parrish testified that he and his girlfriend, S. S., were in his bed when a young, black, skinny male walked into the room and threw the bedcover over their heads; that some of the other men came into the room and used duct tape to bind his hands and cover his eyes before throwing him to the floor; that one of the men put a gun to the back of his head and that they kicked him in his head; that one of the men dared the one holding the pistol to shoot him and that he heard the sound of the gun being cocked; and that the men stole his cell phone and $400 from him. Parrish also testified that while lying on the floor, he heard the bed moving and S. S. crying. S. S. testified that one of the perpetrators fondled and licked her left breast, penetrated her with his fingers, then removed her shorts and underwear and dragged her toward the side of the bed by her ankles before penetrating her with Parrish's lava lamp. She recalled that one of the perpetrators repeatedly struck the lamp to drive it into her, then rolled her onto her stomach and taped her hands together behind her back before leaving the room. S. S. did not see any of the perpetrators.

After the incident occurred, the victims went to James and Greer's apartment and called the police. Sergeant Kevin Waters of the Statesboro Police Department responded to the call. Waters testified that the victims were all very upset and distraught and their clothes and hair were disheveled; that they had duct tape stuck on various parts of their bodies; that Parrish was bleeding freely from his nose and mouth; that he tried to interview each victim separately and had each of them write a statement; and that he learned that S. S.

had been sexually assaulted during the incident. From their investigation of the scene of the crime, the police obtained two latent fingerprints from the duct tape, one of which belonged to Canty, who pled guilty to the offenses charged, and a DNA sample from the rape kit. Additional facts pertinent to the enumerations of error discussed below will be provided as necessary.

1. In their first enumerated error, the appellants argue that the trial court should have excluded, or in the alternative, stricken the testimony of Dale Byrd as inadmissible hearsay.

Byrd, an inmate who was incarcerated with Canty at the Bulloch County jail, testified that he and the four indicted defendants were close friends who attended school together and that he had two conversations with Canty while they were incarcerated in the same block. In the first in June 2002, Byrd recalled that Canty told him that he and Levi broke into someone's house, tied the occupants up in the front room and knocked a guy off of a girl in the bedroom but did not mention the sexual assault. In the second conversation, which occurred in October 2003, Canty told him that the perpetrators were Levi, Lenzie, Courtney, and two guys named Maurice and Keno but denied his own involvement.

Appellants argue that the second statement was inadmissible because it constituted hearsay and was not admissible under the exception to the hearsay rule codified at OCGA § 24-3-5,[2] which provides for the admissibility of declarations of co-conspirators, because there was no other evidence of a conspiracy between the appellants and Canty and because the statement was not reliable. We disagree.

(a) "Statements made by a co-conspirator during the pendency of [a] criminal project, including the concealment phase, are admissible against all other co-conspirators."[3] To render an out-of-court statement admissible under OCGA § 24-3-5, "the [s]tate must make a prima facie showing of the existence of the conspiracy, without regard to the declarations of the co-conspirator[ ], in order to admit [his] out-of-court declarations. The trial judge may admit testimony by co-conspirators before the conspiracy has been proved, provided its existence is ultimately shown at trial."[4] "The question of the existence of a conspiracy is ultimately for the jury to determine. . . . Presence, companionship and conduct before and after the commission of the alleged offenses may be considered by the jury and are circumstances

---

[2] OCGA § 24-3-5 provides that "[a]fter the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all."

[3] (Citations omitted.) *Neason v. State*, 277 Ga. 789, 791 (2) (596 SE2d 120) (2004).

[4] (Citation omitted.) *Dillard v. State*, 272 Ga. App. 523, 527 (5) (612 SE2d 804) (2005).

which may give rise to an inference of the existence of a conspiracy."[5] In order to prove a conspiracy, the state may rely upon direct or circumstantial evidence.[6]

In this case, there was evidence independent of Canty's statements to Byrd that established a conspiracy.[7] LaShon Curtis Powell testified that he had known the defendants for most of his life because they lived in the same neighborhood; that he was playing a PlayStation game at a friend's house, when Lenzie and Levi Wilkerson arrived together, and Dickerson arrived a few minutes later; and that he heard the defendants joking and talking about sticking a bottle into a girl while they were all playing the game. Dewayne Rivers, who met Canty when they were incarcerated together, testified that Canty bragged about a crime he and some other guys committed at the university. Canty also told Rivers that he and the Wilkerson brothers broke into an apartment, that they found a guy and girl in the room and threw the guy into the closet and raped the girl. Canty also said that he stole money and other items from the apartment and that it was the best time that he had ever had. At trial, however, Canty only implicated himself and Levi Wilkerson, who already had pled guilty, and testified that they were forced to commit the crime by another individual and were accompanied by that individual's friends, whom he could not identify. The jury could certainly infer from Canty's testimony, in conjunction with the testimony of Powers and Rivers, that Canty was trying not to disclose the name of the individuals involved. Therefore, there was sufficient evidence from which a jury could find a conspiracy.[8] Additionally, the jury was properly charged that it was responsible for determining whether a conspiracy existed based on evidence other than a conspirator's declarations, and only if it did so, could it use the declaration of one conspirator against another. Accordingly, we find no error in the jury's determination that a conspiracy existed.

(b) Appellants also argue that Canty's statements to Byrd were inadmissible because they were unreliable. "The admission of a co-conspirator's statement does not violate the Confrontation Clause as long as there are sufficient 'indicia of reliability.' "[9] Georgia courts

[5] (Citations and punctuation omitted.) *Guerra v. State*, 210 Ga. App. 102, 103 (1) (435 SE2d 476) (1993).

[6] See *Burnette v. State*, 241 Ga. App. 682, 684 (1) (527 SE2d 276) (1999).

[7] See *Walker v. State*, 213 Ga. App. 407, 408 (1) (444 SE2d 824) (1994).

[8] See id. at 409 (1), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[9] (Citation and punctuation omitted.) *Neason*, supra.

have used the four factors that are indicia of reliability set forth by the United States Supreme Court in *Dutton v. Evans*:[10]

> (1) the absence of an express assertion about a past fact; (2) the declarant had personal knowledge of the identity and roles of the participants in the crime and cross-examination of the declarant would not have shown that the declarant was unlikely to know whether the defendant was involved in the crime; (3) the possibility that the declarant's statement was founded on faulty recollection was remote; and (4) the circumstances under which the declarant gave the statement suggest that the declarant did not misrepresent the defendant's involvement in the crime.[11]

However, "[n]ot all of the indicia need be present to support admissibility of the statement."[12]

Applying the factors to this case, Canty's statement was an assertion of past facts, so that factor weighs against its reliability. However, the remaining factors support a finding of reliability. By Canty's own admission that he committed the crime, he certainly had personal knowledge of the identity of the other perpetrators. The possibility that Canty's recollection of the incident was faulty was remote in light of the heinousness of the crime and Canty's description that it was the best time he had ever had. Even though almost a year passed between the time of the incident and his declaration to Byrd,[13] it was unlikely that he would forget the details of the crime.[14] Finally, there was no reason for Canty to misrepresent the defendants' involvement in the crime. Canty testified that he was friends with Dickerson and the Wilkerson brothers; that they grew up together; and that they were all friends with Byrd, with whom he committed a robbery in 2002. Furthermore, Canty's first statement to Byrd and his statement to Rivers were against his own penal interest, which also weighs in favor of reliability.[15] "Although the first factor does weigh against reliability, standing alone it cannot offset our conclusion that the other three factors weigh heavily in favor of

---

[10] 400 U. S. 74, 88-89 (II) (91 SC 210, 219-220, 27 LE2d 213) (1970) (plurality opinion).

[11] *Copeland v. State*, 266 Ga. 664, 665 (2) (b) (469 SE2d 672) (1996), citing *Dutton*, supra. See *Waters v. State*, 174 Ga. App. 916, 919 (5) (331 SE2d 893) (1985).

[12] (Citations omitted.) *Waters*, supra.

[13] See *Ottis v. State*, 269 Ga. 151, 156 (3) (496 SE2d 264) (1998) (possibility that the declarants' statements, made two years after the crimes, were based on faulty recollection was small because the participants were unlikely to forget the details of such a brutal crime).

[14] See *Belmar v. State*, 252 Ga. App. 264, 267 (2) (555 SE2d 902) (2001) (recollection not faulty where unlikely that declarants would forget details of robbery and shooting).

[15] See *Smith v. State*, 253 Ga. App. 131, 135 (2) (b) (558 SE2d 455) (2001).

reliability."[16] Therefore, we conclude that sufficient indicia of reliability existed to afford the jury a satisfactory basis for evaluating the truth of Byrd's statement as it related to Dickerson and to Wilkerson.

2. Appellants argue that the trial court erred when it did not permit them to cross-examine Jason Parrish about his purchase of marijuana from a neighbor earlier that day. The record shows that outside of the presence of the jury, Parrish testified that earlier that afternoon, he purchased marijuana from a neighbor, DeRon Daniels, from whom he had purchased marijuana 30 or 40 times since August. Appellants argue that the jury should have heard this testimony because it was relevant, as it showed that other persons had knowledge that there were drugs in the apartment. Although Parrish admitted that he purchased drugs from Daniels, he also testified that he knew Daniels well and that Daniels was not one of the assailants. "The admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court whose decision will not be disturbed on appeal absent a clear abuse of discretion."[17] We find no such abuse here.

Dickerson also enumerates as error the trial court's denial of his motion for mistrial on this point, but does not cite to the portion of the record in which he moved for a mistrial. Where an appellant makes no citations to the record to support claims, it is not the appellate court's duty to cull the record in search of error.[18] Nonetheless, this court finds that any argument pertaining to Dickerson's motion for a mistrial is waived because "[t]he correct time for making a motion for mistrial is contemporaneous with the alleged misconduct."[19] Here, the motion was made at the conclusion of the evidence.[20] Accordingly, "it is not timely and will be considered as having been waived because of the delay in making the motion."[21]

3. Appellants find error in the trial court's refusal to admit a photographic lineup that included an unindicted suspect after the admission of other lineups that contained pictures of the defendants and argue that the trial court should have granted a mistrial as a result of this error. Again, we find no abuse of discretion.

---

[16] (Citation and punctuation omitted.) *Duckett v. State*, 259 Ga. App. 814, 818 (4) (578 SE2d 524) (2003).

[17] (Punctuation and footnote omitted.) *Carter v. State*, 266 Ga. App. 906, 908 (2) (598 SE2d 549) (2004).

[18] See *Gary v. State*, 259 Ga. App. 136, 140 (6) (575 SE2d 903) (2003).

[19] (Citation omitted.) *Pinch v. State*, 265 Ga. App. 1, 2-3 (1) (593 SE2d 1) (2003).

[20] Although Wilkerson has adopted Dickerson's enumerations of error, the record does not reflect that he joined in Dickerson's untimely motion for a mistrial or otherwise moved for a mistrial.

[21] (Citation and punctuation omitted.) Id. at 3.

Appellants maintain that the court violated the rule of completeness by permitting the state to introduce only the lineups containing the defendants. Appellants cite to no authority stating that this rule applies to photographic lineups.

> The rule of evidence is, that when an admission, conversation or declaration previously made by a party or a witness is pertinent, the side tendering evidence as to the same is at liberty to prove such portion only thereof as is deemed material, and the other side may then bring out the whole of the admission, conversation or declaration, so far as so doing may be essential in order to arrive at the true drift, intent and meaning of what was said on the previous occasion.[22]

Therefore, even if the rule were applied herein, we find no error as defense counsel had the opportunity to admit the evidence in question, but chose not to do so. For reasons stated in Division 2, appellants have waived their argument that the trial court should have granted a mistrial in connection with this alleged error.

4. Finally, appellants challenged the sufficiency of the evidence. Based on the evidence stated above, we conclude that a rational trier of fact could have found the defendants guilty beyond a reasonable doubt of the offenses charged.[23]

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED JUNE 20, 2006 —

*Franklin, Taulbee, Rushing, Snipes & Marsh, Daniel B. Snipes,* for appellant (case no. A06A0794).

*Stephen B. Taylor,* for appellant (case no. A06A0795).

*Richard A. Mallard, District Attorney, W. Scott Brannen, Assistant District Attorney,* for appellee.

---

[22] (Citation and punctuation omitted.) *Fitzgerald v. State,* 201 Ga. App. 361, 363 (2) (411 SE2d 102) (1991). Accord *Jackson v. State,* 262 Ga. App. 451, 454 (3), n. 3 (585 SE2d 745) (2003), overruled on other ground, *Carter v. State,* 266 Ga. App. 691, 693 (2) (598 SE2d 76) (2004).

[23] *Jackson,* supra.