## A09A0309. SCOTT v. THE STATE.

(677 SE2d 755)

MIKELL, Judge.

After a jury trial, Barrington Scott was convicted of armed robbery and acquitted of possession of a firearm during the commission of a felony and financial transaction card theft.[1] On appeal, Scott challenges the sufficiency of the evidence. We affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[2]

So construed, Ann Marie Cabri testified that at approximately 3:00 a.m. on May 1, 2005, she left a bar and drove to her home on Price Street in Savannah. As she drove down Price Street, she noticed three young men in black and white clothing walking on the sidewalk. Cabri testified that one of the men wore a big white t-shirt and had long braids or dreads, another had on a black tank top and had short hair, and the third man had on a white tank top and had

---

[1] Scott was tried jointly with two co-defendants, Jamel Bryant and Sharief Sheppard. Bryant was convicted of all three charges, and Sheppard was convicted of armed robbery and financial transaction card theft.

[2] (Citation, punctuation and footnote omitted.) *Burden v. State*, 290 Ga. App. 734 (660 SE2d 481) (2008).

YALE LAW LIBRARY

spiky, shorter braids. Cabri parked her car on a nearby street and started walking to her home. One of the men crossed the street and the other two followed. The first man approached Cabri, pulled out a tiny, shiny gun, and demanded that Cabri give him her money. By that time, the other two men were standing behind Cabri on her right and left sides so she could not escape. Cabri asked if she could keep her license, and one of the men to her rear said to take the whole purse and yanked it off of her shoulder. The men walked away, pulling items from Cabri's purse as they went down Price Street.

Cabri testified that she called 911 to report the incident and was told to stay where she was, but that she was so angry that she drove around the neighborhood to look for the men. While driving around, Cabri saw that the police had detained the men who robbed her so she stopped her car and identified them. Cabri approximated that five minutes had passed between her 911 call and when she saw the men with the police.

When asked how she knew that these three men were the ones who robbed her, Cabri responded that they were wearing the exact same clothing and had the same hairstyles. Cabri acknowledged that she did not look directly at the faces of the two young men who stood behind her during the robbery but stated that she was able to observe their hair, clothing, and the gun. Cabri maintained that based upon the men's clothing, hair, and build, she was certain that they were the perpetrators. At trial, Cabri identified the men despite the differences in their hair length and testified that she was 100 percent certain that they were the perpetrators. Cabri identified some receipts, a credit card, and her driver's license, as items that were in her purse during the robbery, and the gun used during the robbery. On cross-examination, Cabri acknowledged that she was nearsighted and did not have her glasses on when the robbery occurred or when she identified the suspects that night. Cabri maintained that when the police conducted the show-up identification procedure with the suspects located fifteen to twenty feet from her, she was confident that they were the robbers based upon their clothing, hair, and skin color.

Corporal George Gundich of the Savannah-Chatham Metro Police Department testified that on May 1, 2005, he and his partner, Detective Arbizo, who were in plain clothes and driving an unmarked car on patrol in the area, were approximately five blocks from the scene of the incident when he received a tone alert for the armed robbery. En route to the scene, Gundich and Arbizo noticed three individuals, who fit the description of the robbers. As the officers prepared to exit the car, the three men stopped and observed the officers. When asked why the officers decided to approach these particular men, Gundich explained that they were the only people in

the area.

Gundich testified that they asked the three men to come over to the car and that they complied immediately. By the time the men reached the police car, Cabri drove up and identified them as her robbers. The officers put the men in handcuffs and patted them down for weapons but did not search their pockets. Two of the three men were taken to the youth detention center. Kendall Allen, a juvenile corrections officer with the Savannah Regional Detention Center, testified that he conducted intake on Bryant and did a thorough pat-down, during which he found Cabri's credit card and driver's license in Bryant's pants.

The officers retraced the steps of the three men from Price Street to where they were apprehended and found a small, semi-automatic handgun near a pole, and some receipts lying on the ground. Arbizo testified that Cabri identified the gun as that used in the robbery. Detective Cecilio Medina, the lead investigator on the case, testified that he saw the defendants on the date of the incident; that he wrote a supplemental report in which he wrote down what each suspect was wearing; that Bryant was wearing a long, white oversized shirt; that Scott wore a white tank top shirt; and that Sheppard was wearing a black tank top. On cross-examination, Medina testified that Cabri consistently told him that she could not identify the defendants by face, but only by their clothing and that the man in the oversized shirt had the gun, and the other one in a white shirt took her purse. Medina also acknowledged his testimony at the preliminary hearing that Cabri told him that she could not see the people who were standing behind her but focused on the man holding the gun.

Upon our review of a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3] An armed robbery occurs when a person, with intent to commit theft, takes property of another from the person or the immediate presence of another by use of an offensive weapon.[4] "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."[5] Scott argues that his conviction must be reversed because the evidence merely establishes his presence at the scene of the

---

[3] (Punctuation omitted; emphasis in original.) Id. at 735 (1), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] See OCGA § 16-8-41 (a).

[5] *Curinton v. State*, 283 Ga. 226, 228, n. 4 (657 SE2d 824) (2008), citing OCGA § 16-2-20 (a).

crime. "Although mere presence at the scene of a crime is not sufficient to convict one of being a party to a crime, criminal intent may be inferred from conduct before, during, and after the commission of the crime."[6] Based on Cabri's testimony, the three men were walking together before the robbery occurred, positioned themselves around her during the robbery, and walked away together. Whether Scott was a party to the crime was a question for the jury, which it chose to resolve against Scott.[7]

Scott also challenges the credibility and reliability of Cabri's testimony. "Identity is a question for the trier of fact, and where a witness identifies a defendant, the credibility of the witness making such identification is not to be decided by this court."[8] As a reviewing court, therefore, we "defer[ ] to the jury's assessment of the weight and credibility of the evidence."[9]

> [T]he testimony of a single witness is generally sufficient to establish a fact, and this includes a victim's uncorroborated identification of an assailant. The lack of corroboration goes only to the weight of the evidence and the victim's credibility, matters which are solely within the purview of the jury.[10]

Therefore, Cabri's testimony, alone, sufficiently supported Scott's conviction.[11] Accordingly, this enumerated error fails.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED APRIL 21, 2009 

*Steven L. Sparger*, for appellant.

---

[6] (Footnote omitted.) *Skaggs-Ferrell v. State*, 266 Ga. App. 248, 250 (1) (596 SE2d 743) (2004).

[7] See id. See also *Cummings v. State*, 227 Ga. App. 564, 566 (489 SE2d 370) (1997) (defendant was party to the crime of armed robbery based on, among other things, his physical position during the robbery and departure with the other robbers).

[8] (Citations and punctuation omitted.) *Wallace v. State*, 289 Ga. App. 497, 499 (657 SE2d 874) (2008).

[9] (Citation and punctuation omitted.) *Fluellen v. State*, 284 Ga. App. 584 (644 SE2d 486) (2007). See *Broome v. State*, 273 Ga. App. 273 (614 SE2d 807) (2005) ("[r]esolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court") (punctuation and footnote omitted).

[10] (Footnote omitted.) *Pringle v. State*, 281 Ga. App. 230, 233 (1) (635 SE2d 843) (2006). Accord *Reed v. State*, 293 Ga. App. 479, 481 (1) (668 SE2d 1) (2008).

[11] See *Pringle*, supra. See also *Range v. State*, 289 Ga. App. 727, 729 (2) (658 SE2d 245) (2008) (victim's identification of defendant as the gunman, standing alone, was sufficient to support his conviction).

*Spencer Lawton, Jr., District Attorney, Julayaun M. Waters, Assistant District Attorney*, for appellee.