A11A0842. LEWIS v. THE STATE.

(714 SE2d 732)

MIKELL, Judge.

Following trial on a six-count indictment, Torrie Antoine Lewis was convicted of armed robbery and burglary and acquitted of aggravated assault and three counts of possession of a firearm during the commission of a crime. On appeal from the denial of his motion for new trial, Lewis asserts that the state failed to prove his guilt beyond a reasonable doubt and that the trial court erred in admitting into evidence the statements of his co-conspirator, Feandre Loggins.[1] Discerning no error, we affirm.

1. Lewis essentially argues that the evidence is weak and thus does not support his conviction of armed robbery and burglary. The strength of the evidence, however, is not the relevant issue.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the

---

[1] Lewis and Loggins were indicted jointly but were not tried together.

standard of *Jackson v. Virginia*,[2] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, we must uphold the jury's verdict.[3]

So viewed, the evidence shows that at 11:00 p.m. on March 18, 2009, Steven McNutt lay in bed listening to music through his headphones. There were no lights on in the house. After getting up to put away his headphones, McNutt opened his bedroom door and encountered a man, later identified as Lewis, holding a pistol. Lewis's face was partially obscured by a shirt. Lewis demanded money, pulled back the slide in the gun and pointed it at McNutt, who retrieved his wallet and showed Lewis that there was no cash in it. A second assailant then entered the room and assured McNutt that he would not be hurt. The second man took McNutt's cell phone, then told him to kneel down by the bed and put his face down. After the second man left McNutt's room, McNutt heard a commotion in the hallway, followed by "Torrance, Torrance, let's go." The assailants left the house, and McNutt went downstairs. He saw that the front door had been kicked in so violently that the wood frame splintered and the knob gouged a hole in the wall. McNutt also saw that a television was missing. McNutt identified Lewis in court as the man who held the gun on him.

Lewis gave a statement to police admitting that he entered the house; that McNutt spoke to him; that Loggins and another man, Quameik Aziz, pushed in the door and took the television; and that Lewis ran out the door after talking to McNutt. Lewis and Loggins made incriminating statements to Shuntivia Campbell, who gave a recorded statement to Athens-Clarke County Police detective Charles Ivey. Campbell testified at trial but contradicted her recorded statement, and it was introduced through Ivey's testimony. According to Ivey, Campbell stated that she was driving Lewis and Loggins home one day in late March when they asked her to stop at a house, which they identified, to "pick up a TV." Campbell told them that she wanted "nothing to do with that," and she took them home. Later, she returned and saw the police at the house that they had identified. Lewis and Loggins told Campbell that they had just "hit a lick." They stated that they kicked in the door, saw a man, pointed a gun at his head, and went through his wallet. Lewis stated that he

---

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] (Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

was carrying the gun, and he showed it to Campbell. The men told her that they hid the TV in the bushes, retrieved it later, and sold it to someone. They also stated that they took the man's cell phone and that they had covered their faces with their arms.

In challenging the sufficiency of the evidence, Lewis cites the absence of forensic evidence tying him to the crime and McNutt's inability to identify him from a photographic array shortly after the robbery was committed. But an appellate court does not weigh the evidence or determine witness credibility.[4] Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[5] An armed robbery occurs when a person, with intent to commit theft, takes property of another from the person or the immediate presence of another by use of an offensive weapon.[6] A person commits burglary when, "without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another."[7] Here, Lewis's statement admitting entry into the home, his statement to Campbell, the victim's in-court identification of him as the armed robber, and the victim's testimony that he overheard one of the robbers calling Lewis "Torrance" provided ample evidence to support his conviction of armed robbery and burglary beyond a reasonable doubt.[8]

2. Lewis next contends that the trial court erred in admitting statements attributed to Loggins, including that Lewis possessed a gun and that the men "hit a lick," under OCGA § 24-3-5,[9] the exception to the hearsay rule for declarations of a co-conspirator, because there was no evidence of a conspiracy between Lewis and Loggins. We disagree.

> Statements made by a co-conspirator during the pendency of a criminal project, including the concealment phase, are admissible against all other co-conspirators. To render an out-of-court statement admissible under OCGA § 24-3-5, the state must make a prima facie showing of the existence of the conspiracy, without regard to the declarations of the

---

[4] Id.

[5] (Punctuation, footnote and emphasis omitted.) *Scott v. State*, 297 Ga. App. 577, 579 (677 SE2d 755) (2009).

[6] OCGA § 16-8-41 (a).

[7] OCGA § 16-7-1 (a).

[8] *Jackson*, supra.

[9] OCGA § 24-3-5 provides: "After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all."

co-conspirator, in order to admit his out-of-court declarations. The trial judge may admit testimony by co-conspirators before the conspiracy has been proved, provided its existence is ultimately shown at trial. The question of the existence of a conspiracy is ultimately for the jury to determine. . . . In order to prove a conspiracy, the state may rely upon direct or circumstantial evidence.[10]

Here, contrary to Lewis's contention, evidence independent of Loggins's declarations to Campbell authorized the jury to infer the existence of a conspiracy. The jury heard Campbell's statement that she drove Lewis and Loggins to the victim's home before the crime was committed and that she observed them at the scene of the crime afterward, while the police were there. Campbell also testified that she told Lewis and Loggins, "ya'll are stupid, you're going to get in trouble anyway not having your face covered trying to rob somebody." Campbell's observations of Lewis and statements to him are not hearsay, as "anything seen or heard by a witness in the presence of the defendant is admissible and does not constitute hearsay. And, where a witness testifies as to what he or she told another person, it is not hearsay."[11] Moreover, the jury heard Lewis's statement that he went to the victim's house with Loggins and Aziz because the victim owed Aziz money.[12] "Presence, companionship, and conduct before and after the commission of the alleged offenses may be considered by the jury and are circumstances which may give rise to an inference of the existence of a conspiracy."[13] The circumstances described above permitted the jury to find that a conspiracy existed without regard to the hearsay declarations of co-conspirator Loggins. The trial court did not abuse its discretion in allowing his statements in evidence.

3. Finally, Lewis argues that the trial court erred in charging the jury on the law of conspiracy because no conspiracy existed. This enumeration of error fails because we have decided that the evidence authorized the jury's determination that a conspiracy existed.

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

---

[10] (Punctuation and footnotes omitted.) *Dickerson v. State*, 280 Ga. App. 29, 31-32 (1) (a) (633 SE2d 367) (2006); accord *White v. State*, 308 Ga. App. 38, 39-40 (1) (706 SE2d 570) (2011).

[11] (Footnotes omitted.) *English v. State*, 288 Ga. App. 436, 440 (2) (654 SE2d 150) (2007).

[12] See *Livingston v. State*, 271 Ga. 714, 719 (3) (524 SE2d 222) (1999) (defendant's statements to cellmate showed he was involved with others in committing felony murder).

[13] (Punctuation and footnote omitted.) *Dickerson*, supra.

58

*Ryan J. Swingle*, for appellant.
*Kenneth W. Mauldin, District Attorney, David T. Lock, Assistant District Attorney*, for appellee.