## A10A2316. WHITE v. THE STATE.
### (706 SE2d 570)

MIKELL, Judge.

In this case arising from a botched drug deal, a jury found Bobby White guilty of aggravated assault (three counts), attempted violation of the Georgia Controlled Substances Act, and possession of a firearm during the commission of a felony. He was acquitted of two counts of felony murder. White's co-defendant, Quinton Newton, was found guilty of aggravated assault and possession of a firearm during the commission of a felony; this Court subsequently affirmed Newton's conviction.[1] White appeals the denial of his motion for new trial, asserting that the trial court erred in admitting hearsay evidence as a declaration of a co-conspirator; that absent the challenged hearsay evidence, the remaining evidence was insufficient to support his convictions for aggravated assault; that the trial court erred in denying his motion to sever; and that he received ineffective assistance of counsel. Discerning no error, we affirm.

On appellate review of a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence.[2] We do not weigh the evidence or judge the credibility of witnesses, but determine only if the evidence was sufficient for a rational trier of fact to

---

[1] *Newton v. State*, 303 Ga. App. 852 (695 SE2d 79) (2010).
[2] *Al-Amin v. State*, 278 Ga. 74 (1) (597 SE2d 332) (2004).

find the defendant guilty of the offenses charged beyond a reasonable doubt.[3]

Properly viewed, the evidence adduced at trial shows that on August 22, 2007, Anselmo Lozano arranged a drug deal between his supplier, Christopher Bryant, and White. Lozano testified that Bryant agreed to sell and White agreed to buy two pounds of marijuana for $2,400. With a shoebox containing the marijuana, Bryant drove Lozano and Newton, Bryant's cousin, to the agreed-upon meeting place, a DeKalb County apartment complex, to complete the deal. Bryant told Lozano that he was bringing Newton along for "protection," because Newton was armed.

At the apartment complex, the three men met up with White and David Montford, a friend of White's. After White "checked out" the contraband in Bryant's car, he complained that the price was too high. Bryant put his car in reverse to leave, but White reached into his pocket and pulled out a gun and started firing into the car, in an attempt to rob the men before they could drive away. Lozano testified that he got out of the car and ran for his life as soon as he saw White's gun and heard gunshots. Although Bryant and Newton each denied having a gun, both men were observed returning White's fire. In the ensuing gunfight, Bryant was shot in the back; however, he survived his wound and drove away from the scene with Newton. Montford died at the scene from multiple gunshot wounds.

White, Bryant, Newton, and Lozano were arrested. Bryant and Lozano pled guilty to charges related to this incident and testified as witnesses at the trial of White and Newton.

1. Montford's girlfriend, Temika Johnson, testified that Montford told her that "he was going somewhere with Bobby White." Johnson further testified that as Montford left to meet White, he told her that he and White planned to meet "someone" to get "weed," but actually they were "just going to rob him for it." Johnson also testified that she heard White tell a friend that he was about to "make a move right quick," meaning that he was going to rob or murder someone. White contends that the trial court erred in admitting Johnson's hearsay testimony under the exception to the hearsay rule codified at OCGA § 24-3-5,[4] which provides for the admissibility of declarations of co-conspirators, because there was no other evidence of a conspiracy between White and Montford. We disagree.

In order for an out-of-court statement to be admissible under

---

[3] Id., citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] OCGA § 24-3-5 ("After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all").

OCGA § 24-3-5, "the [s]tate must make a prima facie showing of the existence of the conspiracy, without regard to the declarations of the co-conspirators."[5] "A conspiracy may be shown by proof of an agreement between two or more persons to commit a crime."[6] That such an agreement existed "may be established by direct proof, or by inference, as a deduction from acts and conduct, which discloses a common design on their part to act together for the accomplishment of the unlawful purpose";[7] and the "common design" may be shown by direct or circumstantial evidence.[8] "Conduct which discloses a common design, even without proof of an express agreement between the parties, may establish a conspiracy."[9] Whether a conspiracy existed is a question for the jury to determine,[10] and the jury may consider, as circumstances giving rise to an inference of the existence of a conspiracy, the defendant's "[p]resence, companionship and conduct before and after the commission of the alleged offenses."[11]

Here, evidence independent of Montford's declarations to Johnson authorized the jury to infer that White and Montford had entered into a conspiracy to rob Bryant, rather than to pay for the marijuana. First, there was evidence that White and Montford were companions. Lozano testified that Montford was a friend of White's; and Johnson, who was Montford's girlfriend and was pregnant with his child at the time of his death, testified that she had called White on her phone at Montford's request on several occasions and that she could recognize White's voice. Further, independent evidence showed that White and Montford were together at the scene on the day of the shooting. Michael Heard, a resident of the apartments, observed these events from his apartment on an upper floor. Heard testified that he saw White and Montford together at the apartments before Bryant's car pulled up and before the shooting started. Lozano testified that Montford was with White at the meeting place; that when White and Montford approached Bryant's car, they stood together, with White standing outside the back door on the driver's side, and Montford standing behind White, next to the car's taillight. Lozano further testified that White was trying to rob the occupants

---

[5] (Citation and punctuation omitted.) *Dillard v. State*, 272 Ga. App. 523, 527 (5) (612 SE2d 804) (2005).

[6] (Punctuation and footnote omitted.) *Brooks v. State*, 281 Ga. 14, 15 (2) (635 SE2d 723) (2006).

[7] (Punctuation and footnote omitted.) Id.

[8] Id.

[9] (Citation omitted.) *Dillard*, supra.

[10] *Dickerson v. State*, 280 Ga. App. 29, 31 (1) (a) (633 SE2d 367) (2006).

[11] (Punctuation and footnote omitted.) Id. at 31-32 (1) (a).

of the car. Heard testified that Montford had a gun in his hand as he lay dead on the ground; and that after Bryant and Newton drove away, White came and got this gun from Montford's body. Heard could see the butt of another gun hanging out from White's pants pocket.

The foregoing evidence was sufficient to authorize the jury to find that there was a conspiracy between White and Montford to rob Bryant and his companions.[12] Accordingly, the trial court did not err in admitting the testimony of Johnson as to out-of-court declarations by co-conspirator Montford.[13]

2. White asserts that because Johnson's testimony as to Montford's out-of-court statements should have been excluded, the remaining evidence against him was insufficient to support his convictions for aggravated assault. In Division 1 above, we rejected White's argument that Johnson's testimony should have been excluded. We also reject White's challenge to the sufficiency of the evidence.

Under OCGA § 16-5-20 (a), a person commits the offense of simple assault when he either "(1) [a]ttempts to commit a violent injury to the person of another; or (2) [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." A person commits aggravated assault if he commits assault "[w]ith a deadly weapon."[14] The indictment charged White with aggravated assault, in that White "did make an assault . . . with a handgun, a deadly weapon," upon the persons of Bryant (Count 5), Lozano (Count 6), and Newton (Count 7). Overwhelming evidence adduced at trial, and summarized above, showed that White was at the scene, that White had a handgun in his possession, and that he drew his handgun and pointed it at Bryant, Lozano, and Newton as they were sitting in Bryant's car, thereby placing them "in reasonable apprehension of immediately receiving a violent injury."[15] White points to conflicts in the testimony, but "[r]esolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court."[16] The factfinder in this case was the jury. Accordingly, the trial court did not err in determining that the evidence was sufficient to support White's convic-

---

[12] See *Copeland v. State*, 266 Ga. 664-665 (2) (a) (469 SE2d 672) (1996) (conspiracy could be inferred from independent evidence).

[13] White did not challenge the trial court's finding that Montford's out-of-court statements were supported by sufficient "indicia of reliability." See generally *Stinski v. State*, 286 Ga. 839, 849 (38), n. 2 (691 SE2d 854) (2010).

[14] OCGA § 16-5-21 (a) (2).

[15] OCGA § 16-5-20 (a) (2). See *Moore v. State*, 286 Ga. App. 313, 316 (1) (649 SE2d 337) (2007) ("the presence of a deadly weapon would normally place a victim in reasonable apprehension of being injured violently") (citation and punctuation omitted).

[16] (Citation omitted.) *Odett v. State*, 273 Ga. 353-354 (1) (541 SE2d 29) (2001).

tions for aggravated assault.[17]

3. White contends that the trial court erred in denying his request for severance and trying him together with his co-defendant, Newton. We disagree.

In a case such as this, involving a felony less than capital, the question of whether to sever the trials of co-defendants lies within the sound discretion of the trial court,[18] and absent an abuse of that discretion, the trial court's ruling on this issue will not be disturbed.[19] The following factors are to be considered by the trial court in exercising its discretion: (1) Will the number of defendants create confusion as to evidence and law relating to each separate defendant? (2) Is there a danger that evidence admissible against only one defendant will nevertheless be considered against the other, despite the court's instructions? and (3) Are the defenses of either defendant antagonistic to the defenses, or the rights, of the other?[20]

Here, there was no danger of confusion because only two defendants were on trial, in connection with the same occurrence. There was no evidence admissible against White that was not admissible against Newton.[21] White contends that the evidence against Newton was so overwhelming as to create a "spillover" effect on the jury, to the prejudice of White. However, this contention does not find support in the record.[22] Lozano testified that he dealt directly with White in setting up the drug deal; that White took part in the drug deal; and that White tried to rob them when he pulled his gun on the occupants of Bryant's vehicle. Lozano, Bryant, and Newton all testified that White pulled his gun and started shooting first. There was no testimony to the contrary, because Heard did not witness the start of the shooting. Heard testified that he saw a handgun on the dead man, Montford; that White came over and took this handgun; and that the butt of a gun was visible in White's pants pocket.

Contrary to White's contention, the fact that Newton elicited Johnson's testimony concerning Montford's out-of-court declarations as co-conspirator does not show prejudice. As we discussed in Division 1 above, Johnson's testimony was admissible. Further, Lozano also testified that White and Montford were trying to rob the

---

[17] See *Jackson v. Virginia*, supra.

[18] See OCGA § 17-8-4 (a).

[19] *York v. State*, 242 Ga. App. 281, 287 (3) (528 SE2d 823) (2000), citing *Dixon v. State*, 268 Ga. 81, 83 (2) (485 SE2d 480) (1997).

[20] *Howard v. State*, 279 Ga. 166, 171 (4) (611 SE2d 3) (2005).

[21] See id.

[22] See *Williams v. State*, 280 Ga. 584, 587 (3) (630 SE2d 370) (2006) (no error in trial court's denial of motion to sever).

three occupants of Bryant's car.[23]

Even assuming that the defenses of the two defendants were antagonistic, "the mere fact that [co-defendants'] defenses are antagonistic is not sufficient in itself to warrant the grant of a separate trial absent a showing of harm."[24] "The burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process."[25] White has failed to make such a showing. Accordingly, the trial court did not abuse its discretion in denying the motion to sever.

4. In his remaining enumeration of error, White contends that his trial counsel rendered ineffective assistance by failing to request a limiting instruction as to Johnson's testimony regarding Montford's out-of-court declarations. In evaluating a claim of ineffective assistance of counsel, we apply the two-prong test set forth in *Strickland v. Washington*.[26] White "must show that counsel's performance was deficient and that, but for that deficient performance, there is a reasonable probability that the outcome of his trial would have been different."[27] On appellate review of the trial court's ruling, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[28]

White has failed to establish either prong of the *Strickland* test. As discussed in Division 1 above, evidence was presented at trial that Montford and White had entered into a conspiracy to rob Bryant and his associates of the marijuana that was the subject of the drug deal. White asserts that his trial counsel was ineffective for failing to request a limiting instruction or jury charge that the jury must determine whether a conspiracy between White and Montford existed based on evidence other than Montford's declarations, and that only if they found that a conspiracy existed beyond a reasonable doubt, could the jury use Montford's out-of-court statements against

---

[23] See *Character v. State*, 285 Ga. 112, 118 (5) (674 SE2d 280) (2009) (even if hearsay testimony that defendant was at crime scene would not have been admissible in a separate trial, trial court's refusal to sever was not prejudicial where other witnesses testified to same effect).

[24] (Citation omitted.) *Howard*, supra.

[25] (Citation and punctuation omitted.) *Metz v. State*, 284 Ga. 614, 616 (2) (669 SE2d 121) (2008) (trial court's failure to grant severance, even if error, was harmless in light of overwhelming evidence of guilt) (id. at 617 (2) (b)).

[26] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[27] (Footnote omitted.) *Jackson v. State*, 282 Ga. 494, 497 (2) (651 SE2d 702) (2007).

[28] (Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

White. White has not cited any authority for the proposition that counsel's failure to request such an instruction constitutes deficient performance.

At the hearing on White's motion for new trial, his trial counsel testified that although he objected to Johnson's testimony regarding Montford's out-of-court statements, he did not recall requesting a limiting instruction and he did not know what instruction he might have requested. "Decisions as to which charges will be requested generally fall within the realm of trial tactics and strategy."[29] Although White's trial counsel could not recall his specific reasons for not requesting a limiting instruction, White has nonetheless failed to show that trial counsel's decision was not a reasonable trial strategy or that there is a reasonable probability that such a request would have affected the outcome of the trial.[30]

During the charge conference, trial counsel specifically objected to the state's requested jury instruction on conspiracy because it would confuse the jury and because White had not been indicted for conspiracy. The state then withdrew the requested charge. Thus, counsel made a strategic decision not to request a charge on conspiracy, on the ground that it might operate to White's detriment. "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel."[31] We conclude that counsel's failure to request the limiting charge suggested by White was a reasonable trial tactic and did not amount to deficient performance.[32] Further, White has not shown that he was prejudiced by his trial counsel's failure to request the described charge,[33] in light of the overwhelming evidence adduced against him.

We note that "the test regarding effective assistance of counsel is to be not errorless counsel, and not counsel judged ineffective by hindsight, but counsel rendering reasonably effective assistance."[34] Applying this principle to the present case, where the jury acquitted White on the felony murder charges against him,[35] we cannot say

---

[29] (Citation and punctuation omitted.) *Scott v. State*, 298 Ga. App. 376, 380 (4) (b) (680 SE2d 482) (2009).

[30] See *Cruz v. State*, 305 Ga. App. 805, 812 (3) (e) (700 SE2d 631) (2010).

[31] (Citations and punctuation omitted.) *Dyer v. State*, 295 Ga. App. 495, 498 (1) (672 SE2d 462) (2009).

[32] See *Scott*, supra at 381 (4) (b) (deficient performance not shown by attorney's failure to request jury charge which could have operated to defendant's detriment).

[33] See id. (defendant failed to show that he was prejudiced by counsel's failure to request jury charges).

[34] (Punctuation and footnote omitted.) *Martin v. State*, 300 Ga. App. 419, 421 (3) (685 SE2d 399) (2009).

[35] White was indicted on three counts of felony murder, but the third count was dropped

that White was deprived of his right to effective assistance of counsel on the ground that counsel failed to request the limiting instruction suggested by White.[36] The trial court's finding on this issue is not clearly erroneous and must be affirmed.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

## DECIDED FEBRUARY 22, 2011.

*Chaunda Brock*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Deborah D. Wellborn, Assistant District Attorney*, for appellee.

---

at the charge conference and was not presented to the jury.

[36] See id. (attorney rendered reasonably effective assistance where jury acquitted defendant on one of two charges against him). Accord *Dixon v. State*, 303 Ga. App. 517, 525 (6) (b) (693 SE2d 900) (2010) (to same effect); *Powell v. State*, 272 Ga. App. 628, 630 (2) (612 SE2d 916) (2005) (same).