**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J. and BOGGS, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 20, 2013**

# In the Court of Appeals of Georgia

A12A2308. BROWN v. THE STATE.                              DO-088 C

DOYLE, Presiding Judge.

Stephaan Brown appeals from the denial of his motion for new trial following a conviction by a jury for a violation of the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act.[1] He contends that (1) the trial court erred by admitting certain testimony over his objection as to relevance, and that the admission invaded the province of the jury, (2) the trial court committed plain error by failing to instruct the jury as to corroboration of accomplice testimony, (3) he received ineffective assistance of counsel, and (4) the evidence was insufficient to support the verdict. For reasons that follow, we affirm.

---

[1] See OCGA § 16-14-4 (a).

Construed in favor of the verdict,[2] the evidence shows that Brown worked as a plant manager at a KMM Telecommunications facility, which provides commercial grade telecommunications cable. As plant manager, Brown authorized overtime work for regular and temporary employees. On one occasion, employee Trevor Deveaux noticed on his paycheck extra overtime hours that he had not worked. He asked Brown about the discrepancy, and Brown replied that he would falsify unworked overtime on behalf of Deveaux if Deveaux would pay him a portion of the unworked overtime pay. Deveaux agreed to the arrangement for one pay period, but thereafter he asked Brown not to authorize any more unearned pay.

A temporary employee, Kevin Black, was also paid unearned overtime pay based on Brown's falsification of records sent to Black's temporary employment agency. As in the proposal to Deveaux, Brown instructed Black to put down extra time on his time sheet, and Brown would authorize it in return for a portion of Black's unearned pay. Brown made the same arrangement with Tamika Dooley, another temporary employee hired by Brown. Brown unsuccessfully offered another employee, Tiffany Knighton, unworked overtime pay if she showed him her legs, and

[2] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). Brown was indicted with a second violation based on theft and resale of copper wire, but he was found not guilty of that count.

he offered at least one other employee unearned overtime pay, but the employee declined.

After Knighton complained and later resigned, Julie Buffington, KMM's general counsel, conducted an investigation into the false overtime reports made by Brown. Based on the investigation, including interviews with Brown and other current and former KMM employees, Brown was terminated. A police investigation ensued, and Brown was charged with the RICO violation.

Brown was tried by a jury and convicted of one RICO violation based on the falsified overtime reports. He filed a motion for new trial, which was denied, giving rise to this appeal.

1. Brown contends that the trial court erred by overruling his objection to testimony by Buffington that Brown was terminated as a result of KMM's investigation. Brown argues that this testimony was irrelevant and invaded the province of the jury. We review a trial court's evidentiary rulings for an abuse of discretion,[3] and we discern none here.

(a) *Relevance*. The challenged testimony essentially explained that KMM's investigation led to Brown's termination. The investigation arose from allegations by

_____

[3] See *Smith v. State*, 284 Ga. 304, 306 (3) (667 SE2d 65) (2008).

3

former employees who revealed the overtime fraud scheme. The indictment contained a narrative overview of the alleged conspiracy, which recounted Brown's role in recruiting employees to falsify overtime hours in exchange for payment. Thus, KMM's investigation into billing allegations and the ultimate termination of Brown for his involvement in these activities were circumstances that elucidated the factual allegations in the complaint.

> Any evidence is relevant which logically tends to prove or disprove any material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant. [Because] Georgia law favors the admission of any relevant evidence no matter how slight its probative value, even evidence of questionable or doubtful relevancy or competency should be admitted and its weight left to the jurors.[4]

Accordingly, the trial court did not abuse its discretion by finding the testimony relevant.

(b) *Invading the province of the jury*. "Georgia law generally precludes a witness from testifying as to his or her opinion regarding an ultimate issue in the case

---

[4] (Punctuation omitted.) *Black v. State*, 305 Ga. App. 903, 906 (3) (700 SE2d 892) (2010).

because to do so would invade the province of the jury."[5] Here, the witness did not give her opinion as to whether Brown was guilty of the allegations as alleged in the indictment; rather, she testified that Brown was terminated from his employment with KMM based on their investigation of him. Her description of the investigation primarily focused on Brown's alleged sexual harassment and failure to adequately safeguard KMM's inventory of copper wire. Brown's trial counsel withdrew any objection as to the findings of KMM's investigation, instead focusing his objection on any testimony that the criminal allegations pending against Brown were true. Trial counsel did renew his objection to Buffington's statement that Brown had been terminated by KMM, but as noted by the trial court, that fact had already been presented by other witnesses (and later by Brown himself) without objection, so it was cumulative. Under these circumstances, there was no error in admitting the challenged evidence.

---

[5] (Punctuation omitted.) *Windhom v. State*, 315 Ga. App. 855, 859 (2) (729 SE2d 25) (2012).

2. Brown contends that the trial court committed plain error[6] by failing to sua sponte instruct the jury that corroboration is required if the only evidence of guilt is accomplice testimony.[7] But "[a]s a rule, it is not error to fail to give a charge on corroboration of accomplices [if] the State relies upon other evidence apart from the accomplice's testimony."[8] Thus, Brown's argument is misplaced in this case because there was other evidence corroborating the incriminating testimony from Brown's accomplices. At trial, the jury heard a recording of Brown telling a co-worker, "We can't do overtime like we used to because everyone's watching." Also, a quality control worker who was not approached by Brown testified that he saw at least one other worker record unworked hours on a time sheet as part of Brown's unearned

---

[6] See OCGA § 17-8-58 (b) ("Failure to [specifically] object [to a jury charge pursuant to subsection (a)] shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties.").

[7] See OCGA § 24-4-8 (2010).

[8] (Punctuation omitted.) *Laing v. State*, 304 Ga. App. 15, 18 (2) (695 SE2d 363) (2010).

6

overtime scheme. Based on this record, a jury instruction on accomplice testimony was not required, and Brown cannot demonstrate plain error.[9]

3. Brown also argues that trial counsel was ineffective for the following reasons: (a) failing to object to a reference by Buffington to an email sent by a deceased ex-employee, Willie Johnson, that was consistent with the email sent by Knighton alerting Buffington to Brown's improper acts; (b) failing to request a jury instruction on corroboration of accomplice testimony; (c) failing to object to the admission of voluminous time sheets; and (d) failing to analyze the time sheets.

Under *Strickland v. Washington*,[10] to succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance.[11] "There is a strong presumption that the performance of trial counsel falls within the wide range

---

[9] Our Courts have "defined 'plain error' as 'that which is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice' or which 'seriously affects the fairness, integrity[,] or public reputation of a judicial proceeding.'" (Punctuation omitted.) *State v. Kelly*, 290 Ga. 29, 32-33 (2) (a) (718 SE2d 232) (2011).

[10] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[11] See id. at 687-688, 694 (III) (A)-(B).

of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case."[12] If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong.[13] In reviewing the trial court's decision, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[14]

(a) *Failure to object to Johnson email*. At trial, Buffington testified about the events leading up to KMM's internal investigation. She explained that based on Knighton's email accusing Brown of sexual harassment and mismanagement of resources, she convened a conference call to speak to Brown, his supervisor, and KMM's controller. After the call, Buffington described her actions:

> [W]e wanted to get to the bottom . . . We need[ed] to go back and get as much information as we can about this. So that's what we did. We investigated and then before it even – before we even had done our

---

[12] (Citation and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).

[13] See *Strickland*, supra, 466 U. S. at 697 (IV); *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004).

[14] (Punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

investigation[,] we got the email with the complaint from Willie Johnson [who was deceased by the time of trial] . . . alleging very much the same stuff. Nothing about sexual harassment.

At that point, Brown argues that his trial counsel should have objected because Johnson was deceased and not available for cross-examination. Brown points out that his trial counsel had successfully moved in limine to exclude Johnson's email on that ground. But the actual email itself remained excluded, and there were other earlier references to the existence of Johnson's email at trial that are not challenged on appeal. KMM's controller had already testified, without objection at trial or challenge on appeal, that Johnson's email had led to KMM's investigation. Brown's trial counsel used Johnson's email to cross-examine the controller and later Knighton about the timing of Knighton's email relative to Johnson's termination, suggesting a relationship or collusion between Knighton and Johnson. Therefore, the brief reference by Buffington was cumulative of other evidence, and Brown cannot meet his burden to show prejudice under *Strickland*.[15]

(b) *Failure to request jury instruction on the requirement for corroboration of accomplice testimony.* As explained in Division 2, the evidence did not require an

---

[15] See *Allen v. State*, 286 Ga. App. 469, 474 (2) (a) (649 SE2d 583) (2007).

instruction on accomplice testimony, so failing to request one does not support Brown's ineffective assistance claim.[16]

(c) *Failing to object to the admission of time sheets*. At trial, the State introduced several hundred pages of time sheets from employees. Brown now contends that his trial counsel should have objected because they were unorganized and indecipherable, and therefore irrelevant. Pretermitting whether this argument shows any harm from their admission, Brown's counsel testified at the motion for new trial hearing that he did not make a substantive objection because he believed they were helpful:

> My recollection is that we actually wanted the records to come in, that having reviewed the records[,] we were convinced that there were enough inconsistencies in them, and that there were enough contradictions in the records themselves with the testimony of the other witnesses that would work to our benefit. . . I remember thinking that it wasn't a bad thing if they came in because there was a way they could be beneficial to us.
>
> . . .

---

[16] See *Porter v. State*, 292 Ga. 292, 294 (3) (a) (__ SE2d __) (2013) ("counsel's failure to make a meritless objection cannot constitute evidence of ineffective assistance").

[L]et me be clear. They were hundreds of pages of records and there were hundreds of pages of time records, but there were only a few of them that were actually referenced at trial[,] and those were tabbed that were referenced and were referred to in closing arguments. They were relevant to the testimony that had come forth, and I certainly thought that the jury would have been sophisticated enough to look at those that we pointed out and that would have worked to our benefit.

In light of this testimony, Brown's argument fails because trial counsel's conduct was in pursuit of a reasonable, informed trial strategy. The inquiry in an ineffective assistance claim "focuses on the reasonableness of counsel's conduct from counsel's perspective at the time of trial. Thus, the [appellate] courts will not second-guess counsel's decisions concerning matters of trial strategy and tactics."[17] Accordingly, Brown has failed to show deficient performance on this ground.

(d) *Failing to adequately analyze the time sheets.* Brown further contends that his trial counsel performed deficiently by inadequately analyzing the time sheets and summarizing them for the jury. Nevertheless, as explained by the testimony above, the evidence supports a finding that Brown's trial counsel did analyze the time sheets and found the tabbed references adequate to make his case to the jury.

---

[17] (Punctuation omitted.) *Smith v. State*, 261 Ga. App. 25, 27 (3) (581 SE2d 673) (2003).

Although [Brown's] current counsel may not agree with that strategy[,] and even his trial attorney may have rethought [his] earlier decision, this Court does not evaluate effectiveness of trial counsel by hindsight or by what present counsel would have done. [Brown] failed to show that his counsel's performance was deficient under the criteria set out in *Strickland v. Washington*. A defendant is entitled not to perfect representation but to reasonably effective assistance.[18]

4. Last, Brown contends that the evidence failed to support the guilty verdict. When reviewing the sufficiency of the evidence,

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[19]

---

[18] (Citation and punctuation omitted.) *Smith v. State*, 306 Ga. App. 693, 701 (3) (703 SE2d 329) (2010).

[19] (Emphasis in original; citation omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

12

Under this standard, the evidence sufficed to support a finding that Brown conspired with other employees to falsify their overtime records in exchange for payment by them. There was direct evidence of Brown's unlawful acts, corroborated by non-accomplice witnesses, as well as a recording of Brown's own incriminating statement. Any inconsistencies in the evidence were for the jury to resolve.[20] Accordingly, this enumeration is without merit.

*Judgment affirmed. Andrews, P. J. and Boggs, J., concur*.

---

[20] See *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009).