**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 15, 2015**

# In the Court of Appeals of Georgia

A15A1528. BARNEY v. THE STATE.

RAY, Judge.

An Emanuel County jury convicted Eric LaShuwn Barney, II, of two counts of burglary. He appeals from the denial of his motion for new trial, arguing that the trial court committed plain error in failing to charge the jury on accomplice corroboration and in granting the State's motion for re-sentencing. He also argues that the evidence was insufficient to support his convictions and that he received ineffective assistance of counsel. For the following reasons, we affirm his conviction, but vacate his sentence and remand the case to the trial court for re-sentencing.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. *Newsome v. State*, 324 Ga. App. 665, 665 (751 SE2d 474) (2013). We

neither weigh the evidence nor assess the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the appellant guilty of the crimes charged beyond a reasonable doubt. *Byrd v. State*, 325 Ga. App. 24, 24 (752 SE2d 84) (2013).

The evidence shows that on May 18, 2010, Maria Smith left her job at 2:30 p.m., ran a few errands, and then picked her sons up from school and daycare. At about 5:00 p.m., she drove to her mobile home in Summertown and remained in her truck, talking on her cell phone, while her oldest son went ahead into the mobile home. Her son ran back outside and told her that "somebody went in your house and tore up your room." Maria Smith discovered that her air conditioning unit had been torn out of her window and several items were stolen, including jewelry and a video game system. Maria Smith then went to a cousin's house to dial 911, and the sheriff's office responded.

Maria Smith testified that she saw Barney, Jonathan Smith, and Travoski Harris driving together on the road to Swainsboro the day after the burglary. Maria Smith had known Barney "all [her] life" because they grew up in the same neighborhood, and she believed he might be related to her. She also knew Jonathan Smith because he is her cousin. Barney and Jonathan Smith knew where she lived. The day after the

burglary, Barney called Maria Smith to tell her that he was not the person who had robbed her. Maria Smith thought this was unusual, explaining that he "ain't never called me before." He then called her a few more times for the same reason.

Maria Smith lives next to another of her cousins, Marcus Sherrod. Sherrod was at work on the day of the crime when Maria Smith called to inform him that her mobile home had been burglarized. Sherrod called his father and asked him to stop by his mobile home, and he later found out that it had been burglarized as well. Sherrod's air conditioning unit had been torn out of his window and several items had been stolen from his home, including guns and jewelry. Sherrod testified that, shortly before the burglary, Barney had called and asked him what he was doing and whether he was at work.

Investigator Davis with the Emanuel County Sheriff's Office responded to the scene of the burglaries. He went to both residences, interviewed Maria Smith and Sherrod, and took photos of their respective homes. Both Maria Smith and Sherrod mentioned that they thought Jonathan Smith might have been involved in the burglaries. The next day, Deputy Kersey initiated a traffic stop on a vehicle driven by Jonathan Smith. Harris and Jonathan Smith were also in the vehicle, as were tools that could have been used in the commission of the burglaries. When Jonathan Smith was

3

later interviewed by Investigator Davis, he made statements that he, Harris, and Barney were involved in the burglaries. He stated that Barney pushed in both air conditioning units and did not split the stolen items as agreed.

Jonathan Smith also testified at trial that he, Harris, and Barney were responsible for the burglaries. He testified that he rode with Barney and Harris to a wooded area behind the two mobile homes. They approached Sherrod's mobile home first. Jonathan Smith pushed in the window air-conditioning unit to enter the trailer and unlock the door for Barney. The two then stole guns from the mobile home. The men then went to Smith's trailer, where they again pushed in the window air-conditioning unit to enter the home and stole jewelry and a videogame system. On cross-examination, Jonathan Smith stated that he did not remember telling the interviewing detectives that Barney had pushed in the air conditioning units. He explained that Barney had helped him push in the air conditioner at Maria Smith's residence.

Harris also testified at trial. When asked about the details of the crimes, Harris was reluctant to answer, stating "I am not in the mindset of going through this. I can't do this. . . . I don't remember the stuff. . . . I mean this is based on two years ago." When asked to confirm that he had earlier pled guilty to the two burglaries without

4

a plea recommendation, Harris stated "I guess so. I don't want to lie because I don't want to be charged for perjury. . . . I have lied under oath before. . . . I'm scared. I don't want to be charged with no perjury just because I lied, because I don't want to go through that." When pressed about earlier statements he made to the police and testimony made in earlier trials, Harris avoided the questions, stating, "I am putting all this behind me." The State then received the trial court's permission to treat Harris as a hostile witness and to ask him leading questions.

Based upon Harris's continued non-responsive answers, the trial court interrupted the testimony, sent the jurors out, summoned Harris' attorney to the courtroom so that she could be present during the testimony, and instructed him that he could lose his first offender status if convicted of perjury. Harris then admitted that he had previously testified about the burglaries in an earlier court proceeding and confirmed that he, Jonathan Smith, and Barney had been involved in the burglaries of the two homes and had stolen guns, a video game console, and jewelry. He also testified, upon cross-examination, that he did not wish to change any statements made in the prior proceeding.

1. Barney argues that the trial court committed plain error by failing to sua sponte instruct the jury that corroboration is required if the only evidence of guilt is

5

accomplice testimony under former OCGA § 24-4-8.[1] Where, as here, no objection is made to a jury charge at trial, "appellate review for plain error is required whenever an appealing party properly asserts an error in jury instructions." (Footnote omitted.) *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011).

> Under former OCGA § 24-4-8,
>
> The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including . . . felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness. . . .

However, "as a rule, it is not error to fail to give a charge on corroboration of accomplices if the State relies upon other evidence from the accomplice's testimony." (Punctuation and footnote omitted.) *Brown v. State*, 321 Ga. App. 198, 200 (2) (739 SE2d 118) (2013). "Slight evidence of defendant's identity and participation from an extraneous source is all that is needed to corroborate an accomplice's testimony." (Citation and punctuation omitted.) *Lane v. State*, 324 Ga. App. 303, 311 (4) (b) (750

---

[1] The provision in former OCGA § 24-4-8 has been carried forward into the new Evidence Code and re-numbered as OCGA § 24-14-8. Because the new Evidence Code became effective as of January 1, 2013, however, it does not apply to this case. Accordingly, we cite to the old Code section.

SE2d 381) (2013). "Corroborative evidence may be circumstantial and based on the testimony of other accomplices. And it does not have to be sufficient to warrant a conviction. Rather, the corroboration, which may include the defendant's conduct before and after the crime, need only connect and identify the defendant with the crime." (Citation omitted.) *Sims v. State*, 306 Ga. App. 68, 70-71 (1) (701 SE2d 534) (2010).

Here, there was evidence to corroborate Jonathan Smith's testimony as an accomplice. Although Harris was a reluctant witness at trial, his testimony revealed that Barney was involved with the crimes. Further, Sherrod testified that Barney called him before the burglary to ask if he was at home, and Maria Smith testified that Barney contacted her several times to let her know that he was not involved in the burglaries. She further testified that Barney was seen riding with his co-defendants the day after the burglary. See *Brown*, supra at 200-201 (2) (no plain error in failing to give accomplice corroboration charge when State relied on other evidence apart from accomplice's testimony).

2. Barney next argues that the evidence was insufficient to support his convictions because the accomplice testimony was uncorroborated. However, as noted above, the accomplice testimony of Jonathan Smith was corroborated by the

testimony of Harris, as well as by Barney's calling the victims before and after the burglaries. We find no merit in this enumeration. See *Crawford v. State*, 294 Ga. 898, 901 (1) (757 SE2d 102) (2014) (Once the State adduces evidence which arguably corroborates the accomplice's testimony, it is "peculiarly a matter for the jury to determine whether the evidence sufficiently corroborates the accomplice's testimony and warrants a conviction") (citations and punctuation omitted).

3. Barney contends that his counsel rendered ineffective assistance by failing to request a jury charge on accomplice liability and in failing to cross-examine Harris and Jonathan Smith concerning alleged favorable sentencing terms they received in exchange for testimony against him.

"In order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that counsel performed deficiently and that the deficient performance prejudiced the defendant such that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different." (Footnote omitted.) *Styles v. State*, 329 Ga. App. 143, 151 (3) (764 SE2d 166) (2014). On review of the trial court's ruling, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the

8

legal principles to the facts." (Punctuation and footnote omitted.) *White v. State*, 308 Ga. App. 38, 43 (4) (706 SE2d 570) (2011).

(a) Barney first contends that he received ineffective assistance of counsel when his counsel failed to request a jury charge on accomplice liability. He has abandoned this enumeration by failing to support it with either citations to the record or to legal authority. See Court of Appeals Rule 25 (c) (2). Even if such argument had been properly raised before this Court, however, it is without merit. At the motion for new trial hearing, Barney's trial counsel testified that she did not request a charge for accomplice liability because "our theory was that he was not present for the burglary[.]" See *Styles*, supra at 151-152 (e) (trial counsel did not render ineffective assistance for failing to request a jury instruction on robbery by intimidation as a lesser included offense of armed robbery when defense strategy was that defendant had nothing to do with the crime). "Decisions as to which charges will be requested generally fall within the realm of trial tactics and strategy. . . [and] [a]s a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Punctuation and footnotes omitted.) *White*, supra at 44 (4). As Barney has failed to show that his trial counsel's decision was not a reasonable trial strategy, we find no merit in this enumeration.

9

(b) Barney next asserts that his trial counsel was ineffective for failing to cross-examine Harris and Jonathan Smith concerning alleged favorable sentencing terms they received in exchange for their testimony against him. We find no error.

At trial, both Harris and Jonathan Smith testified that they entered guilty pleas without a sentence recommendation from the State. Further, Barney presented no evidence at the motion for new trial hearing that either defendant received a favorable sentence because they agreed to cooperate with the State. Accordingly, we find that the record does not support the claim of ineffective assistance with respect to cross-examination of either Harris or Jonathan Smith. See *Sears v. State*, 292 Ga. 64, 72 (5) (3) (734 SE2d 345) (2012) (no ineffective assistance with respect to counsel's cross-examination of an inmate who testified that defendant had confessed to committing the crime when defendant failed to produce any evidence that the inmate received a favorable sentence for cooperating with the State).

Further, at the motion for new trial hearing, Barney's trial counsel testified that she elected not to cross-examine Harris and Jonathan Smith about their sentences because both had testified that they pled guilty without a recommendation from the State regarding their sentences. She further explained that she chose to focus her cross-examination on the fact that both men admitted that they had lied in the past.

10

"Even though counsel is permitted to cross-examine thoroughly a testifying co-defendant about the terms of his plea agreement, it does not necessarily follow that counsel is ineffective for failing to do so." (Footnote omitted.) *Bonner v. State*, 308 Ga. App. 827, 828 (1) (a) (709 SE2d 358) (2011). In the instant case, defense counsel's decision not to question Harris and Jonathan Smith about their plea deals was tactical and strategic. "[T]actical decisions provide no grounds for reversal unless they are so patently unreasonable that no competent attorney would have chosen them." (Punctuation and footnote omitted.) Id. at 828-829 (1) (a). Here, we cannot say that trial counsel's failure to cross-examine the two men about their pleas was unreasonable. We find no merit in this enumeration.

4. Barney argues that the trial court erred in concluding that the sentence originally imposed for the burglary convictions was void and, thus, that the trial court was without jurisdiction to grant the State's motion for re-sentencing. We disagree.

At the conclusion of trial, the trial court sentenced Barney as a recidivist[2] to ten years as to the first burglary count and twenty years on the second burglary count, with five to serve in prison consecutive to the first count and fifteen to serve on probation. Almost a year later, the trial court held a re-sentencing hearing where the

---

[2] Barney had three prior felony convictions.

11

State argued that the original sentence was illegal and void because, as a recidivist with three prior convictions, Barney should have been given the maximum sentence of 20 years without probation on each count, as required by OCGA § 17-10-7 (a) and (c). The trial court apparently agreed and re-sentenced Barney to twenty years to serve on each count to run concurrently with each other.

Barney argues that, under OCGA § 17-10-7 (a), the trial court had the discretion to suspend or probate any portion of Barney's sentence and, thus, that the original sentence was not void and could not be amended. See *Brown v. State*, 262 Ga. App. 659, 659 (586 SE2d 343) (2003) ("[T]he inherent power of a trial court to modify, suspend, or vacate a judgment ceases at the end of the term in which it was rendered. However, the trial court may correct a sentence the law does not allow at any time") (citation omitted).

Based upon his three prior felony convictions, Barney's sentencing was governed by OCGA § 17-10-7 (a) and (c). OCGA § 17-10-7 (a) provides:

> . . . [A]ny person who, after having been convicted of a felony offense in this state . . . , commits a felony punishable by confinement in a penal institution shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law,

12

the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense.

OCGA § 17-10-7 (c) provides:

> ...[A]ny person who, after having been convicted ... for three felonies ..., commits a felony within this state shall, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

This Court has held that subsections (a) and (c) of OCGA § 17-10-7 must be read together. *Jefferson v. State*, 309 Ga. App. 861, 864 (2) (711 SE2d 412) (2011), overruled on other grounds by *Maddox v. State*, 322 Ga. App. 811, 815 (1) (746 SE2d 280) (2013).

We agree that the trial court's initial sentence was void because it failed to comply with OCGA § 17-10-7 (a) and (c). Under OCGA § 17-10-7 (a), the trial court was required to impose a twenty year sentence for each burglary count, the longest sentence prescribed in the burglary statute, OCGA § 16-7-1 (b). This it did not do, as the trial court sentenced Barney merely to 10 years on Count 1. Accordingly, the trial court did not err in concluding that Barney's original sentence was void and in amending the sentence to comply with OCGA § 17-10-7 (a) and (c). See *Hill v. State*,

272 Ga. App. 280, 281 (672 SE2d 92) (2005) ("trial court . . . did not err in correcting [defendant's] sentence so that it complies with OCGA § 17-10-7 (c)").

We note, however, that although OCGA § 17-10-7 (c) "prohibits parole, it does not dispense with the trial court's discretion to probate or suspend part of a sentence under OCGA § 17-10-7 (a)." (Citation and punctuation omitted.) *Jefferson*, supra. Therefore, to the extent that Barney argues that the trial court erred by failing to exercise its discretion to probate or suspend part of his sentence, if it so chooses, we agree. "Unless affirmative evidence shows otherwise, the trial court is presumed to have exercise its discretion in imposing [a] sentence." (Punctuation and footnote omitted.) *Cody v. State*, 324 Ga. App. 815, 827 (5) (b) (752 SE2d 36) (2013). At the re-sentencing hearing, neither the trial court nor the State acknowledged that the trial court was vested with the discretion to probate or suspend a portion of Barney's sentence. Further, the trial court agreed that it was going to impose the "least terrible [sentence] the [c]ourt can," and sentenced Barney to twenty years without parole as to each burglary count, to be served concurrently. Thus, there is evidence that the trial court was confused as to its discretion to suspend or probate a portion of Barney's sentence. "The trial court's failure to exercise its discretion was error, which we cannot find harmless under these circumstances." (Citation omitted.) *Banks v. State*,

14

225 Ga. App. 754, 756 (5) (225 SE2d 754) (1997). Compare *Allen v. State*, 325 Ga. App. 752, 753 (3), n. 2 (754 SE2d 795) (2014) (affirming sentence where trial court concluded that it was required to sentence defendant to maximum sentence without parole, and defendant "did not argue and the record did not reflect any error by the trial court with regard to its decision not to probate or suspend a portion of . . . [the] sentence."). Accordingly, Barney's sentence is vacated, and this case is remanded for resentencing in accordance with this opinion. The trial court has the authority to reimpose the sentence of 20 years to serve on each count, but must show on the record that it exercised its discretion in doing so. See *Page v. State*, 287 Ga. App. 182, 184 (3) (651 SE2d 131) (2007).

*Judgment of conviction affirmed, sentence vacated and case remanded for re-sentencing. Barnes, P. J., concurs.  McMillian, J., concurs in judgment only as to Divisions 1 and 2, and concurs fully otherwise.*