**FIFTH DIVISION**
**REESE, P. J.,**
**COLVIN, J., and SENIOR APPPELLATE JUDGE PHIPPS.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 24, 2021**

# In the Court of Appeals of Georgia

A20A1601. THOMPSON v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury found Jerrel Earl Thompson guilty of theft by taking, obstruction of an officer, and four counts of fleeing or attempting to elude a police officer. Thompson appeals the denial of his motion for new trial, asserting that the evidence was insufficient to support his convictions for felony fleeing and eluding and that he was improperly sentenced as a recidivist. For the reasons that follow, we affirm Thompson's convictions and sentence.

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is some evidence, even

though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.

*Thelusma v. State*, 356 Ga. App. 495, 495-496 (847 SE2d 852) (2020) (citation omitted).

So viewed, the evidence at trial showed that the victim advertised his red Chevy Impala for sale on Facebook. A buyer – whose Facebook profile name was Jerrell Thompson – responded and told the victim that he would buy the car, but the victim would have to bring the car to Savannah. The victim and his then-wife drove in separate cars from South Carolina to Savannah, Georgia to sell Thompson the car. Thompson originally gave the victim one address, but when the victim texted that he was close, Thompson changed the meeting location to outside a different address.

When the victim arrived at the meeting location, he recognized Thompson from his Facebook profile. Thompson asked to test drive the vehicle, and the victim agreed. However, once Thompson was in the driver's seat he "sped off" without paying the victim for the car. The victim gave chase and called 911, but stopped when Thompson drove through stop signs. At trial, the victim identified Thompson, as well as Thompson's Facebook profile picture, as the potential buyer who stole his car.

The victim provided police with Thompson's name and pictures of the car, the car's VIN number, and the car's license plate, and a "be on the lookout" was broadcast to police. Two days later, a sergeant on routine patrol in Savannah noticed a red Impala driving toward him, radioed dispatch, and began following the car. The Impala made a three-point turn at a high rate of speed. At some point, other officers in marked patrol units attempted to stop the Impala, but it was traveling 65-70 miles per hour in a 35 miles per hour speed zone and running through stop signs and red lights.

A lieutenant involved in the car chase testified that he was driving a marked car when he gave chase. According to the lieutenant, the Impala was traveling "at or above 100 miles an hour" in posted speed limit areas of 30-45 miles per hour and ran at least one red light. The lieutenant decided to stop the chase because the Impala was traveling at such a high rate of speed, traffic could have been coming out of any of the neighborhoods, "[a]nd if there would have been an accident, it would have been horrific."

A third officer testified that he also gave chase in a marked patrol unit. According to this officer, the Impala drove "at a very aggressive speed" over speed humps on the Savannah State University campus. At some point, the Impala crashed

3

into a pole on the university campus, and the driver fled on foot. Although the officer chasing the car at this point lost sight of the Impala for approximately five seconds prior to the crash, he "observed a black male running from the vehicle with a driver side door open only." The officer caught the individual less than 100 yards from the car. At trial, the officer identified Thompson as the individual he saw running from the car and eventually apprehended.

Thompson testified at trial that he met the victim and gave him money to purchase the vehicle. He did not know why the victim reported the car stolen. Thompson admitted that he was driving the car and fled from police, but stated that he fled because he did not have a license.

Thompson was charged in a seven count indictment, including four counts of felony fleeing and eluding (OCGA § 40-6-395 (b) (5) (A)) by fleeing from four different police officers at two different locations. Counts 2 and 3, naming different officers, alleged that Thompson

> did willfully fail and refuse to bring his vehicle to a stop while fleeing and attempting to elude a pursuing police vehicle in traffic conditions which placed the general public at risk of receiving serious injuries, to wit: at night while driving at speeds greatly in excess of the posted speed limit in a reckless manner past numerous cross streets and through residential areas and by traveling through the intersection at Derenne Avenue without stopping for a red traffic signal at that intersection, and

4

> while operating his vehicle in excess of 20 miles an hour above the posted speed limit[.]

Counts 4 and 5, naming different officers, tracked virtually the same language, but added that Thompson drove in a reckless manner

> by failing to stop for a red traffic signal at the intersection of Derenne Avenue and LaRoche Avenue and by driving in the wrong direction on College Street, a one-way street, and while operating his vehicle in excess of 20 miles an hour above the posted speed limit[.]

The jury convicted Thompson on all four counts of felony fleeing and eluding, specifically finding on the jury verdict form that Thompson "fled in traffic conditions which placed the general public at risk of receiving serious injuries" and "fled while operating the vehicle in excess of 20 miles per hour above the posted speed limit."

1. On appeal, Thompson first alleges that the evidence introduced at trial failed to support his convictions for felony fleeing and eluding as alleged in the indictment. According to Thompson, the indictment charged him with a felony based on his alleged actions of driving in excess of 20 miles per hour over the posted speed limit *and* doing so in conditions that placed the general public at risk, but the State failed to prove that he placed the general public at risk. Thompson, therefore, contends that he should have been sentenced only for misdemeanor, as opposed to felony, fleeing and eluding. We disagree.

5

OCGA § 40-6-395 (a) mandates that it

> shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such signal shall be in uniform prominently displaying his or her badge of office, and his or her vehicle shall be appropriately marked showing it to be an official police vehicle.

"Any person violating the provisions of subsection (a) of this Code section shall be guilty of a high and aggravated misdemeanor[.]" OCGA § 40-6-395 (b) (1). However, the offense is punishable as a felony when, while fleeing or attempting to elude a pursuing police officer, the defendant "[o]perates his or her vehicle in excess of 20 miles an hour above the posted speed limit[,]" "[f]lees in traffic conditions which place the general public at risk of receiving serious injuries[,]" or commits other delineated actions not at issue in this case. OCGA § 40-6-395 (b) (5) (A). The statute lists these delineated actions in the disjunctive.

Pretermitting whether the evidence at trial authorized the jury to find that Thompson drove in conditions that placed the general public at risk, Thompson's argument fails. As Thompson acknowledges in his appellate brief, both the Georgia Supreme Court and this Court previously have concluded that when a statute

6

authorizes conviction upon proof of one or more alternative methods and these methods are expressed in the disjunctive, an indictment should charge the methods using the word "and," but "[a]t trial . . . it is sufficient for the State to show that [the offense] was committed in any one of the separate ways listed in the indictment[.]" *Cash v. State*, 297 Ga. 859, 862 (2) (778 SE2d 785) (2015) (citation and punctuation omitted); *Gutierrez v. State*, 235 Ga. App. 878, 882 (3) (510 SE2d 570) (1998). Accordingly, even if the State had failed to prove that Thompson drove in conditions that placed the general public at risk (OCGA § 40-6-395 (b) (5) (A) (iii)), Thompson is still guilty of felony fleeing and eluding because, as he admitted, the State established that he fled from the pursuing officers by driving in excess of 20 miles per hour over the posted speed limits. OCGA § 40-6-395 (b) (5) (A) (i). See *Jones v. State*, 301 Ga. 94, 96-99 (1) (799 SE2d 749) (2017) (evidence of only one predicate was sufficient to sustain a felony murder conviction, even though two predicates were listed in the indictment).

Although Thompson argues that this well settled authority should no longer be followed in Georgia, we are bound by the opinions of the Supreme Court. See *Pak v. Ga. Dept. of Behavioral Health & Developmental Disabilities*, 317 Ga. App. 486, 488 (731 SE2d 384) (2012) ("this Court has no authority to overrule or modify a decision

7

made by the Supreme Court of Georgia"); Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI. The trial court did not err in denying Thompson's motion for new trial on this ground.

2. Thompson further contends that his sentence for felony fleeing and eluding should be vacated because he was improperly sentenced as a recidivist and should not have received a sentence that prevented him from being eligible for early release on parole. Thompson specifically asserts that (a) he should have been sentenced as a recidivist only under OCGA § 17-10-7 (c), and not OCGA § 17-10-7 (a), and (b) the trial court failed to exercise its discretion when sentencing him to the maximum sentence permitted. We find no error in the trial court's sentence.

The Final Disposition shows that Thompson was sentenced as a recidivist under OCGA § 17-10-7 (a) and (c) to twenty-five years, with the first twenty years to be served in confinement and the remaining five years on probation. His sentence includes five years of probation for theft by taking and twelve months of probation and a fine for obstruction of an officer, concurrent to the theft by taking sentence. The twenty years to be served in confinement stems from Thompson's sentence of five years to serve, consecutively, on each of the four felony fleeing and eluding convictions.

8

A felony fleeing and eluding conviction "shall be . . . punishable by a fine of $5,000.00 or imprisonment for not less than one year nor more than five years or both." OCGA § 40-6-395 (b) (5) (A). The statute specifically prohibits any portion of such a sentence from being probated or suspended, and further prohibits the sentence from being served concurrently with any other offense. OCGA § 40-6-395 (b) (5) (B).

Turning to the recidivist statute, OCGA § 17-10-7 (a) provides:

> . . . [A]ny person who, after having been convicted of a felony offense in this state . . ., commits a felony punishable by confinement in a penal institution shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense.

And, OCGA § 17-10-7 (c) provides:

> . . . [A]ny person who, after having been convicted . . . for three felonies . . ., commits a felony within this state shall, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

a. *Sentencing in accordance with OCGA § 17-10-7 (a) and (c).* We turn first to Thompson's argument that the trial court erred in sentencing him under both

9

OCGA § 17-10-7 (a) and (c). Thompson admits that he had three prior felony convictions, but he contends that the clear language of the subsections in OCGA § 17-10-7 demonstrates that the legislature intended subsection (a) to apply to defendants who have one or two prior convictions and subsection (c) to apply to defendants with three or more prior convictions. Thompson, however, once again acknowledges in his appellate brief that this argument previously has been decided adversely to him. In fact, this Court repeatedly has held that "subsections (a) and (c) of OCGA § 17-10-7 must be read together and . . . the sentence of a defendant with at least three prior felony convictions is governed by both subsections." *Reason v. State*, 353 Ga. App. 266, 269 (2) (836 SE2d 223) (2019); *Barber v. State*, 350 Ga. App. 309, 314 (3) (827 SE2d 733) (2019); *Barney v. State*, 333 Ga. App. 807, 813-814 (4) (777 SE2d 490) (2015); *Thompson v. State*, 265 Ga. App. 696, 698 (2) (595 SE2d 377) (2004).

Although Thompson urges us to reconsider this well settled precedent, we decline to do so unless and until the Supreme Court or the legislature mandates such a change in this long standing authority. The trial court did not err in sentencing Thompson under both OCGA § 17-10-7 (a) and (c).

b. *Trial court's exercise of discretion.* Thompson argues that "[e]ven if OCGA § 17-10-7 (a) and (c) were both applicable here and five years was required to be imposed on each felony fleeing and eluding conviction, the trial court was still not mandated to impose all prison time for these offenses." We disagree.

Thompson correctly notes that although OCGA § 17-10-7 (c) prohibits parole, that Code section does not take away the trial court's discretion to probate or suspend part of a sentence under OCGA § 17-10-7 (a). See *Barney*, 333 Ga. App. at 814 (4); *Muhammad v. State*, 242 Ga. App. 540, 541 (2) (529 SE2d 418) (2000). However, in this case the recidivist statute must be read in conjunction with the punishment mandated by the fleeing and eluding statute, OCGA § 40-6-395 (b) (5). While OCGA § 40-6-395 (b) (5) (A) permits a punishment of imprisonment for not less than one year nor more than five years, OCGA § 40-6-395 (b) (5) (B) prohibits any portion of a sentence for felony fleeing and eluding from being probated or suspended or being served concurrently with any other offense:

> Following adjudication of guilt or imposition of sentence for a violation of subparagraph (A) of this paragraph, the sentence shall not be suspended, probated, deferred, or withheld, and the charge shall not be reduced to a lesser offense, merged with any other offense, or served concurrently with any other offense.

OCGA § 40-6-395 (b) (5) (B).

11

At the sentencing hearing, the trial court noted that it "took a deep dive into [the sentencing issues] just to make sure that [the court] understood exactly what was going on[.]" The court then construed the applicable statutes and concluded that under OCGA § 40-6-395 (b) (5) (B) and OCGA § 17-10-7 (a) and (c), it was required to sentence Thompson to five years to serve on each of the four felony fleeing and eluding convictions, and that these sentences could not run concurrently with each other or the sentences imposed on Thompson's other convictions. This sentence is correct. OCGA § 17-10-7 (a) requires the trial court to impose the maximum punishment permitted for felony fleeing and eluding, which is five years. OCGA § 40-6-395 (b) (5) (A). And OCGA § 40-6-395 (b) (5) (B) prohibits the trial court from suspending or probating Thompson's sentences for felony fleeing and eluding. OCGA § 40-6-395 (b) (5) (B) also prohibits the trial court from allowing a defendant to serve felony fleeing and eluding sentences concurrently with any other offenses. Accordingly, the trial court could not exercise any discretion under OCGA § 17-10-7 (a) to probate, suspend, or run any of Thompson's felony fleeing and eluding sentences concurrently.

*Judgment affirmed. Reese, P. J., and Colvin, J., concur.*